## Bradley v. Commonwealth.

(Decided December 18, 1923.)

## Appeal from Allen Circuit Court.

1. Criminal Law—Instruction Held to Assume Another's Guilt as Principal and Defendant's Presence.—In a homicide case, instruction that, if defendant struck and wounded deceased, etc., or aided and abetted H. in so doing, he should be found guilty of voluntary manslaughter, held erroneous as assuming that H. was guilty as principal and that defendant was present.

2. Homicide—Instruction on Manslaughter Erroneous where Intention Omitted.—To constitute manslaughter a killing must have been wilful or intentional, and an instruction authorizing a conviction was erroneous where it omitted the element of intention.

3. Criminal Law—"Aider" or "Abettor" must be Actually or Constructively Present and Participate.—To constitute one an "aider" or "abettor" in the commission of a crime he must be actually or constructively present at the time of its commission, and participate in some way in the act committed.

4. Criminal Law—Prearrangement, Mutual Understanding or Concert of Action Unnecessary to Make One Aider or Abettor, but Participation Necessary.—To constitute one an aider or abettor it is not essential that there should be a prearrangement or mutual understanding or concert of action, but, in the absence of these, it is essential that the one so charged should in some way, either by overt act or expression of advocacy or sympathy, encourage the principal in his unlawful acts.

5. Homicide—Evidence Held to Render it Error to Refuse to Instruct on Abandonment of Difficulty.—In a homicide case, where defendant testified he did not know of the presence of co-defendant who did the actual killing, that he was vanquished in the fight with deceased, and had surrendered, and when codefendant pulled deceased off of him he was not aware of his intention to assault deceased, and that he in good faith abandoned the difficulty and dragged himself off to one side, held, that the court erred in refusing to instruct on abandonment of difficulty.

F. R. GOAD, THURMAN B. DIXON, NOEL F. HARPER, and W. D. GILLIAM for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The appellant Bradley and Tom Hughes were jointly indicted in the Allen circuit court charged with the mur-

der of Will Willoughby. In a separate trial Bradley was found guilty of manslaughter and his punishment fixed at twenty-one years in the penitentiary. In a subsequent trial Hughes pleaded guilty to the crime of manslaughter and the same penalty was fixed by the jury.

On this appeal it is urged that the verdict of the jury is not sustained by the evidence and that the court erred in the instructions given and in failing to give the whole law of the case.

It appears from the evidence that Bradley was at the time of the trouble a single man, 39 years of age, living with his mother in the town of Scottsville. He was employed by one Reed to haul timber for him, using Reed's team for this purpose.

The difficulty occurred on the 7th of May, 1923, at a public spring in that town. Bradley had at that time prepared to haul some heavy logs but was unable, as he says, to secure any help and about noon drove his team over to the spring to water them. On his way he met one Tom Hughes and gave him money with which to purchase some intoxicants called "ginger" which he was to bring to the spring. After watering his team and while waiting for Hughes, the deceased Will Willoughby and his grown son, Orville, both of whom were strangers to Bradley, came down with a four-horse team and un-hitched for the purpose of feeding and watering them. Bradley and Willoughby engaged in conversation in reference to a "swap" of their teams and its seems became irritated with each other; however, nothing serious transpired and Willoughby left, going over to a lumber yard to collect payment for a log he had delivered. Bradley remained and shortly afterwards Hughes arrived with the ginger, which they drank, and according to Bradley he gave Hughes some more money with which to buy whiskey and the latter left in search of it.

Other witnesses say Hughes went off a short distance and sat down by one Bish Calvert, who had come up in the meantime. Willoughby returned to the spring in about half an hour and the trouble was renewed.

Orville Willoughby states that he remained with the team and that his father on his return told him to bridle the horses, and walked to the spring to get a drink; that Bradley called him a son-of-a-bitch, caught him and

"slung" him away from the spring; that they clinched and fell down with his father on top and that Hughes got up from a nearby rock on which he and Bish Calvert were sitting and pulled his father off of Bradley; that Bradley got up and began throwing rocks at his father and hit him with a stick; that Hughes joined in, the two striking him with sticks and rocks, knocking him down and continuing to strike him after he was down; that he left to secure the aid of an officer and on his return his father was unconscious and lying in the same place.

A colored witness, Will Bush, was working at a mill something over 100 yards distant. He could not hear the language of the parties but saw them. He first saw Bradley and Willoughby going toward the spring, where they motioned their hands at each other; that Bradley threw a rock, but he does not know whether or not he hit Willoughby; that they passed behind a wagon and clinched; that later he saw Hughes and Bradley get rocks and Bradley hit Willoughby on the side of the head and he fell on his face; that as he arose he was struck again with a stick; also he says Bradley had a knife. Other Commonwealth evidence is to the effect that Bradley was intoxicated and indicates that he and Hughes continued to assault and strike the deceased until he was rendered unconscious, when Bradley went off and sat down, the parties remaining in that situation until the arrival of the officers shortly thereafter.

Bradley testifies that Willoughby became irritated in the first conversation; that at the time of the second trouble Hughes had gone for the liquor and there was no one present but Willoughby and his son; that Willoughby told him that he had seen his boss and that he was coming down to take his team away from him; that he called deceased a G— d— liar, and that Willoughby jumped down in the branch and picked up some rocks and began throwing them at him; that he dodged the first one and stooped to pick up a rock and while he was in that posture Willoughby struck him on the head and knocked him down and jumped on him, pressing him into the branch and beating him while down; that he told Willoughby he would give up and someone pulled Willoughby off of him and he in a dazed way crawled to one side and sat down in a concrete gutter with his head on his hands; that he saw Tom Hughes strike Willoughby

with a stick and knock him down and as he started to get up Hughes struck him with a rock and knocked him down a second time and picked up another big rock and was preparing to strike him again when he threw up his hands and told him not to strike him, and Bish Calvert also told Hughes if he hit Willoughby any more he would sink him into hell; that thereupon Hughes desisted and threw the rock down. He says that the first lick that Hughes made with the stick was on the front of the head and the one with the rock was made over the left ear, and these are the only wounds received by Willoughby.

Bradley's evidence is corroborated by Calvert and in a large measure corroborated by a number of other witnesses who were equally as near to the scene of the difficulty as were the witnesses who testified for the Commonwealth. Several of them state that Hughes struck the deceased with a stick, knocking him down, and as he was rising struck him with a large rock, and that this was done after Bradley had ceased fighting and crawled away and sat down on the concrete gutter to which reference has been made, and that he continued to sit there until arrested by the officers a short time afterward.

Willoughby died two or three days thereafter. According to the medical evidence he had a severe but not serious wound on the temple and a second wound over the left ear, which fractured his skull and produced his death.

Appellant criticizes the instruction on voluntary manslaughter and insists that the court should have given a separate instruction on the issue as to whether he in good faith abandoned the difficulty before the fatal blow was struck.

The instruction given reads as follows:

"Although the jury may believe that the defendant has not been proven guilty of murder as predicated in the first instruction or of aiding and abetting in so doing as predicated in the second instruction yet if they shall believe from the evidence to the exclusion of a reasonable doubt that at said time and place the defendant Bradley did unlawfully and feloniously and without previous malice and not in his necessary and apparently necessary self-defense, but in sudden affray and in sudden heat and passion, strike and wound the said

Willoughby upon his body and person with sticks and rocks and clubs, deadly weapons, or did aid and abet said Hughes in so doing, and from the effects of which striking and wounding the said Willoughby died within a year and a day, then the jury will find defendant not guilty of murder, but guilty of voluntary manslaughter and fix his punishishment at confinement in the penitentiary not less than two nor more than twenty-one years in their discretion.''

There are so many obvious errors in this instruction that it is hardly necessary to point them out. The part relating to aiders and abettors assumes that Hughes was guilty as principal and that defendant was present, and in this respect was erroneous in each instance.

If it should be said that under the facts of the case this error was not prejudicial to appellant's substantial rights, it will be observed that the question of intention, which has always been held to be an essential element in the crime of murder, is omitted. ''To constitute manslaughter the killing must have been willful or intentional.'' Robertson's Crim. Law, section 189; Curtis v. Com., 169 Ky. 733; Com. v. Mosser, 133 Ky. 609; Com. v. Saylor, 156 Ky. 251; Wheeler v. Com., 120 Ky. 708; Greer v. Com., 111 Ky. 93; Mitchell v. Com., 88 Ky. 351, 29 C. J. 1128.

In this respect the instruction was not only erroneous but necessarily highly prejudicial as it practically denied to appellant the only defense he offered.

Appellant offered an instruction as to the abandonment of the difficulty; his contention is that he did not know of Hughes' presence; that he was vanquished in the fight and had surrendered; that when Hughes pulled Willoughby off of him he was not aware of his intention to assault Willoughby; that he in good faith abandoned the difficulty and dragged himself off to one side and sat down with his head on his hands and took no further part except to protest against Hughes striking the deceased with a rock and that Hughes acted as a mere volunteer without any aid or assistance on his part.

In order to constitute one an aider or abettor in the commission of a crime he must be actually or constructively present at the time of its commission and participate in some way in the act committed.

It is not essential that there should be a prearrangement or mutual understanding or concert of action, but in the absence of these, it is essential that the one so charged should in some way either by overt act or by expression of advocacy or sympathy encourage the principal in his unlawful acts.

While well understood by the profession it is questionable whether the jury could draw such distinction from the facts of this case under an ordinary instruction.

In view of the fact that he had participated in the same fight and thereby wearied the deceased and remained present during the fight between Hughes and Willoughby, the jury might have believed all that he claimed and yet under the general instruction have concluded that he was then and there present aiding and abetting the principal. As this defense was mainly relied upon by the defendant and evidence was introduced in support of it, we feel that it should have been covered by an instruction. 16 C. J. Crim. Law, section 2499, p. 1057; Tucker v. Com., 145 Ky. 84; Shelton v. Com., 145 Ky. 543; Curtis v. Com., 169 Ky. 731; Howard v. Com., 26 Rep. 441; Hawkins v. Com., 142 Ky. 188.

In another trial the court will correct the manifest errors in the third instruction and in a separate instruction will tell the jury "although you may believe from the evidence to the exclusion of a reasonable doubt that on the occasion mentioned in the evidence the defendant, Sank Bradley, engaged in an encounter with the deceased, Will Willoughby, yet if you further believe from the evidence that he voluntarily and in good faith abandoned such difficulty before the fatal blow was struck, and that without any procurement or understanding on the part of the defendant, Thomas Hughes thereafter voluntarily entered into a fight with Willoughby and assaulted and struck him with a rock or stick and thereby inflicted the wound that produced his death and that in so doing he was not aided, assisted or encouraged by defendant, Sank Bradley, in such event you will find the defendant not guilty."

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.