## McCown v. Commonwealth.

(Decided Oct. 6, 1933.)

J. E. CHILDERS and W. M. L. BOWLING for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

Appellant was convicted of the offense of malicious shooting at and wounding another with intent to kill, and sentenced to serve three years in the penitentiary. From that judgment this appeal is prosecuted.

On the morning of October 4, 1932, the appellant, who had married the sister of Allen Mullins, had some trouble with his wife. There is scarce doubt but that appellant was drinking heavily that morning. His wife left their home and went to the home of her father, where her brother, Allen Mullins, was. After fortifying himself with whisky, Mullins, armed with his pistol, left his father's house to go to the home of appellant. He claims that his purpose was to get a panama hat which he had left at appellant's house and which he needed to shield his head from the sun when he went abroad. About the same time appellant determined to go to the home of his father-in-law to get his wife. Appellant and Mullins met about midway between the two homes and a fight ensued. There is a dispute as to who started the fight, but the disposition of that dispute is not material here. At all events, Mullins got appellant down on the ground and was beating him with a rock when some bystanders intervened and separated them. Mullins was angry at the interference and presented his pistol to the interveners, but went no further than such hostile demonstration. Appellant went down to a nearby creek, washed the blood from his face, and then, regaining the highway by a bypath, started back to his own home. Mullins called to him two or three times to stop, which appellant finally did. Mullins then caught up with appellant, and the two walked on toward appellant's home. They seem to agree that during this walk they made up their quarrel and became friendly again. Mullins says that he continued on towards appellant's home to get his hat, and appellant does not deny that statement. Appellant's home abutted on the highway or street which ran in front of it. There was a front porch from which access was gained to the house

through the front door, and this front porch was reached by going up a few steps from the highway or street. When they reached appellant's home, Mullins declined to go in, but waited on the outside for appellant to go in and get the hat. As Mullins waited, he leaned against the balustrade of the front porch. The appellant went in the house, but, instead of getting Mullins' hat, he procured a single-barrel shotgun and thus armed came back out on the porch. Some of the commonwealth's witnesses testify that, as appellant emerged on the front porch, he was uttering dire threats against Mullins. Appellant denies this and says that he had no desire to hurt Mullins and only intended to frighten Mullins away from his home. When appellant reached the front of his porch with his gun pointed downwards and toward Mullins, the latter grabbed the barrel of the gun and began to push it around in the effort to keep the muzzle away from his body. In the struggle, appellant jerked the gun away from Mullins. Mullins and the commonwealth's witnesses testify that apellant then deliberately aimed the gun at Mullins and fired it, wounding Mullins rather severely. Appellant claims that in the tussle over the gun it went off accidentally just as the gun was jerked loose from Mullins' grasp. After Mullins was shot, he went off down the street and later received attention. Appellant was arrested. On the way to the jail, the constable who arrested him remarked to the appellant that perhaps appellant had shot Mullins accidentally, and appellant replied that he did not do it accidentally. To quote from the constable's testimony: "And he (appellant) said: 'No, I didn't do it accidentally, I just done it and I hate it because I done it.'"

As grounds for reversal, appellant insists that the court erred in permitting the constable to testify concerning this conversation he had with appellant, that the verdict was flagrantly against the evidence, and that the court erred in its instructions.

So far as the first ground is concerned, it is insisted that under our Anti-Sweating Act, section 1649b-3 of the Statutes, it devolves upon the commonwealth to prove that a confession obtained after an arrest was not obtained by the methods denounced in the statute, supra, before such confession is admissible in evidence against an accused. Conceding arguendo all

that appellant claims as to the character of the statement he made being a confession and as to the interpretation he puts on the statute, we are yet met with the proof in this case which shows that the statements made by the appellant after his arrest were freely and voluntarily made and were not procured by any of the methods denounced by the statute. The testimony of the constable was clearly admissible.

So far as the second ground is concerned, the resume we have given of the evidence above clearly demonstrates its lack of merit.

As to the third ground, the court in submitting the case to the jury gave an instruction on intentional shooting at and wounding with malice, an instruction on shooting and wounding in sudden affray or in sudden heat and passion but without malice, an instruction on self-defense, and an instruction on reasonable doubt. He gave no instruction on accidental shooting or on the reckless use of firearms. It is insisted that at least in failing to give an instruction on accidental shooting the court erred. It will be noted that appellant's sole defense in this case was that of accidental shooting and that there was some evidence to support his contention in this regard. This precise question was before this court in the case of Howard v. Commonwealth, 80 S. W. 817, 26 Ky. Law Rep. 148, as modified on rehearing in 81 S. W. 689, 26 Ky. Law Rep. 465. There, as here, the accused was charged with the offense of malicious shooting and wounding with intent to kill. There, as here, the defense was accidental shooting with evidence to support that defense. There, as here, the court instructed on malicious shooting and shooting in sudden heat and passion together with an instruction on self-defense and one on reasonable doubt. On the original hearing the judgment was affirmed, but on rehearing, it was reversed; this court holding that the appellant was entitled to an instruction on accidental shooting. This Howard Case was followed in the like case of Mann v. Commonwealth, 110 S. W. 243, 33 Ky. Law Rep. 269, and its principle was followed and approved in the cases of Bradley v. Commonwealth, 201 Ky. 413, 257 S. W. 11, and Day v. Commonwealth, 173 Ky. 269, 191 S. W. 105. These cases are conclusive of the appellant's right to a reversal for failure to give the instruction on accidental shooting. It will not be necessary to discuss

whether appellant would have been entitled to a reversal solely because of the failure to give an instruction on the reckless use of firearms, but, since the case must be reversed for the reason indicated, the court will on the next trial, in addition to an instruction on accidental killing, also instruct on the reckless use of firearms.

Judgment reversed for proceedings consistent with this opinion.