### Smith v. Commonwealth.

(Decided Feb. 18, 1936.)

JAMES S. WILSON for appellant.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Thurlow Smith and Hubert Smith, his son, have been indicted by the grand jury of Bell county for the offense of maliciously shooting and wounding with intent to kill. The indictment in separate counts also charged Thurlow Smith with two former convictions of a felony. On separate trial Thurlow Smith has been found guilty under the various counts in the indictment and his punishment fixed at imprisonment for life. He is appealing.

Since the evidence shows that Hubert Smith fired the shots which inflicted the wounds upon Bailey Mays, the prosecuting witness, it is apparent that Thurlow Smith was found guilty under the instruction on aiding and abetting.

The grounds urged for reversal in substance are: (1) That the evidence is not sufficient to sustain the verdict because of the absence of any showing that appellant in any way aided, abetted, counseled, assisted, or advised in the commission of the crime alleged in the indictment; (2) that the court committed prejudicial error in instructing the jury; and (3) that the commonwealth's attorney in his closing argument made improper and prejudicial statements to the jury.

The shooting out of which the indictment grew occurred at or near a schoolhouse at Fourmile in Bell county where a religious service was being held in the nighttime. A railroad ran in front of and near the schoolhouse, and a fire had been built about 10 or 12 feet from the track on the side opposite the school building. There were several people gathered around this fire. While the services were in progress, a number of shots were fired at the side of or to the rear of the building, and some of the persons in the building, and possibly some on the outside, attracted by the shooting, went to the place where it occurred to investigate. According to the evidence of Bailey Mays,

a boy 17 years of age, he left the building about the time the shooting occurred and went out onto the railroad tracks and called Henry Webb to him, and while they were in conversation, he was struck in the back of the head with a rock, but did not know who threw it. About this time Thurlow Smith walked up in front of him, grabbed his arm, and struck him on the head with a pistol, knocking him down; that Thurlow Smith got down on him and called to Hubert to take his pistol; that Hubert Smith took his pistol which he had in the bosom of a jacket he was wearing under his belt and shot him, the bullet entering his arm; that he then got up and started toward the fire when Hubert Smith shot him again, inflicting a wound in his leg. He testified that he did not draw, or attempt to draw, his pistol, and that no words passed between him and Thurlow or Hubert Smith prior to the time he was struck with the rock and pistol. He was corroborated in the main by a number of witnesses, some of whom stated that, after Mays had fallen, appellant had hold of him and was striking or punching him when he called to his son to get Mays' pistol. Mays testified that he was sober, and in this he is also corroborated by witnesses who saw him, although there is some evidence to the contrary. According to the evidence of all the witnesses for the commonwealth, only two shots were fired at the scene of the difficulty, and there is some evidence indicating that the first shot fired by Hubert Smith struck and injured his father's fingers. There is evidence that, when Mays called Webb up on the railroad tracks, he asked him for a drink of liquor. Records were introduced in evidence showing the two former convictions of appellant as charged in the indictment.

Appellant testified that before he had trouble with Mays three or four shots were fired out by the side of the schoolhouse. He was standing in front of the schoolhouse at the time, and went around to where the shots were fired and took a pistol from Kelso Dean, and then went to the fire near the railroad tracks; that Bailey Mays came from toward the schoolhouse over on the railroad in front of the fire and was drunk and had a pistol; that he walked up and advised him to get away, as he might be indicted for being drunk and having a pistol; that Mays said, "What have you got to do with it?" and jerked out his pistol and he heard

him cock it; that he grabbed him, and in the scuffle they went down, and Mays shot him through the finger and thumb; that he fell on top of Mays, and his son ran up, reached down, grabbed the pistol, and shot Mays; that when the second shot was fired, he had gotten up and started toward the fire and was examining his wounded hand. He testified that he did not tell his son to shoot Mays, but admitted that he did not tell him not to shoot nor try to prevent him from shooting, giving as his reason that he himself had been shot in the hand. There was some evidence that appellant was under the influence of liquor, but this he denied. He did, however, admit that he had taken two drinks an hour or so before the trouble. He stated that he said nothing whatever to his son during the difficulty. Hubert Smith who was between 13 and 14 years of age, testified that he heard the shooting out at the side of the schoolhouse and went out on the railroad where Bailey Mays was standing with a pistol in his hand; that he heard him cock it, and about that time his father, who was down by the fire, walked up to Bailey Mays; that he (the witness) hit Mays with a rock and knocked him down, and Mays and his father commenced scuffling and Mays' pistol went off; that he then ran up and wrung the pistol from Mays' hand and stepped back and shot him with it; that his father said nothing to him at the time of the difficulty. Both he and his father testified that there had been no words between either of them and Mays.

By agreement, an affidavit was read as the evidence of Henry Miller for appellant, which stated in substance that Mays had been standing on the railroad track with another fellow and Thurlow Smith came up; that the witness heard a shot from the railroad, and, turning around, saw Hubert Smith, Thurlow Smith and Bailey Mays fighting; that Mays fell and got up and that they walked from the railroad; that he saw Hubert Smith fire a shot at Bailey Mays and the latter ran off.

It is true as argued by counsel for appellant that, in the absence of a showing of a prearrangement or mutual understanding or concert of action, evidence sufficient to convict one as an aider and abettor in a crime must tend to show some overt act expressly or impliedly, or encouragement of the principal in his

unlawful acts. A jury cannot convict on mere suspicion. Counsel cite and rely on the case of Bradley v. Commonwealth, 201 Ky. 413, 257 S. W. 11, and a number of other cases. In the Bradley Case, Bradley and Hughes were jointly indicted for the murder of one Willoughby. A reading of the opinion will reveal that there was evidence indicating that Bradley engaged in an encounter with Willoughby, but had voluntarily and in good faith abandoned the difficulty when without any procurement or understanding on his part Thomas Hughes voluntarily entered into a fight with Willoughby and with a rock or stick inflicted the injuries which produced his death. It is quite obvious that this case presents an entirely different state of facts, since the evidence for the commonwealth and the reasonable and legitimate inferences to be drawn from it clearly indicate that appellant and his son made an unprovoked, vicious attack on Mays, and, according to his own witness, they were both fighting Mays, and appellant admits that he had hold of Mays when he told his son to get the pistol and continued to hold him until Hubert Smith procured the pistol and fired the first shot; and not even then did he say anything or take any measures to stop his son's attack on Mays. The other authorities cited by counsel may be as easily distinguished. From the foregoing, it is apparent and we conclude that the evidence was sufficient to take the case to the jury and to sustain a verdict finding him guilty of aiding and abetting.

Concerning the second ground urged for reversal, it is maintained by counsel that appellant claimed, and the evidence shows, that he had abandoned the difficulty, and his son without his procurement, knowledge, or intention, shot Bailey Mays, and that an instruction on that theory of the case should have been given. As supporting that contention, counsel again cite and rely on Bradley v. Com., supra, and contend that an instruction should have been given similar to the one directed to be given in the event of another trial of the Bradley Case. From what we have already said, it is apparent that the evidence in the Bradley Case warranted the instruction directed to be given in the event of another trial, but no such state of case is presented by this appeal. Appellant had Mays down and was holding him, and, according to

the evidence of some of the witnesses, was punching and striking him when his son fired the first shot, and there is nothing in his evidence or in the evidence of the other witnesses as to what followed that would warrant or authorize the instruction contended for.

In his closing argument before the jury, the commonwealth's attorney made reference to a case in another county in which he defended a man charged with aiding and abetting another in the commission of a crime, and that a judgment of conviction had been affirmed on appeal, although his client was standing some distance away and had done nothing and said nothing. Objection was made to the statement, and thereupon the court promptly admonished the jury that the statements objected to had no connection with the case, and that it was the duty of the jury to be controlled by the evidence before them. While courts have allowed attorneys for the commonwealth considerable latitude in discussing the evidence introduced before the jury and inferences to be drawn from it, they have consistently condemned argument concerning matters not connected with, and having no bearing on, the case. Even though counsel in this instance made argument that was improper, and thus went beyond the bounds of legitimate argument, the error, if any, was cured, and the effect of the argument, if any was made upon the minds of the jurors, was counterbalanced by the court's admonition.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.