## Lamb et al. v. Commonwealth.

(Decided Sept. 29, 1936.)

562

G. J. RICE and O. B. BERTRAM for appellants.

B. M. VINCENT, Attorney General, and ROSCOE VINCENT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appellants, Albert Lamb and Goebel Dills, seek the reversal of a judgment of conviction, carrying imprisonment for 21 years, upon the charge of assaulting another with an offensive weapon with an intent to rob him and robbing him. The punishment for this crime was increased by the Legislature in 1934 to imprisonment in the penitentiary for 21 years, or for life, or by death. Section 1160, Kentucky Statutes, as amended by Acts 1934, p. 157, c. 50.

W. D. Tabor was in charge of a liquor store owned by his brother, located a mile or more from Campbellsville on the Lebanon road. Lamb lived nearby. Tabor testified that around 7:30 o'clock in the evening of January 12, 1936, Lamb, Dills, and an unidentified man came in the store. As he was serving them, Lamb drew a pistol, commanded him to "stick them up," come from behind the counter, and stand in a corner of the room. He asked Lamb not to kill him, and he responded that he would not as all they wanted was the money. Dills took the money from the cash register and the third man carried out an arm load of whisky. He returned and the three loaded themselves down with more liquor and required Tabor to drink or die. He drank about two-thirds of a pint. The other two men drove away while Lamb compelled Tabor to go down the road to a bridge and there left him. Between $50 and $60 in money and whisky worth perhaps $50 were taken. Corroborative of Tabor's testimony is evidence that the cash register showed it had been tampered with by one who did not know the combination key; also, the defendants were later in possession of a quantity of liquor like that of

which Tabor was robbed. Several other circumstances may be regarded also as some evidence of the robbery by these men.

Lamb did not testify or offer any evidence in his behalf, except that of two witnesses who were with him in "nigger town" in Campbellsville between 1 and 2 o'clock that afternoon, when, they say, he had 2½ pints of liquor.

Goebel Dills testified that he was at the Tabor saloon several times that Sunday getting liquor. In the early afternoon he, Lamb, and Arthur Graham were there accompanied by Dills' wife and some others. Lamb and Benonie Spurling remained when he left and he never saw them afterward. On one of the trips there in the afternoon Tabor was lying on the floor drunk. Others testify to that also. Dills gave in detail an account of his whereabouts the rest of that day, undertaking to establish an alibi at the time the robbery was committed. He returned to Tabor's place about 9:30 that night. The whisky which he later had was purchased from Tabor during the day, with money he had won in a poker game in Lebanon. Graham testified to being with Dills and Lamb that day, and corroborated the alibi up until just before dark, when he "passed out." He did not wake up until the next morning, when he found himself in his automobile on the side of the Greensburg road. A number of other witnesses testified to Dills' whereabouts, but it cannot be said with certainty that any of them covered the crucial period. Tabor's reputation for general morality was overwhelmingly proven to be bad. Likewise, Dills' reputation for truth and veracity and morality was shown to be of the same kind.

In the main the conviction rests upon the testimony of an impeached witness. But Lamb made no defense, and the jury was fully justified in rejecting Dills' alibi, so it cannot be said that the verdict is flagrantly against the evidence. Schuster & Chambers v. Commonwealth, 232 Ky. 171, 22 S. W. (2d) 586; Patterson v. Commonwealth, 256 Ky. 745, 77 S. W. (2d) 14.

The indictment charges the commission of the crime in the language of the statute adapted to the manner in which Tabor was assaulted. It names the property taken from him as "about $52 lawful money of the United

States, and a quantity of whisky, the amount of which is unknown to this grand jury, with the felonious and fraudulent intent to convert same to their own use, and to permanently deprive the owner of his property therein." It is argued that as the evidence showed the property taken was owned by T. A. Tabor instead of W. D. Tabor there was a fatal variance between the indictment and the proof; also that the description of that property is so indefinite and insufficient as not to bar the prosecution of the accused for robbing T. A. Tabor; hence the defendants were entitled to a directed verdict.

The gravamen of the offense is the assault with the felonious intent to rob a person—not the taking of the property. The person here assaulted and robbed was in possession and control of that property, and it is not material that the title was in another. The indictment does charge that the owner was deprived of his property. As against a robber, the person robbed is regarded as the owner of the property whereof he was robbed. Robinson's Kentucky Criminal Law, section 606. The statement of ownership in a case of robbery is only a part of the description of the property taken, and, if it is otherwise identified, the failure to charge in the indictment who was the owner is not material. Section 128, Criminal Code of Practce. Taylor v. Commonwealth, 66 Ky. (3 Bush) 508; Owen v. Commonwealth, 76 S. W. 3, 25 Ky. Law Rep. 466.

After the defendants had elicited from Tabor the fact that he had twice been convicted of a felony, the commonwealth's attorney asked what for, and he responded "for whisky." Thereupon the defendants' counsel asked if at the 1936 term of the Clinton circuit court he was not convicted of attempted arson. That is a felony. Section 1171, Kentucky Statutes. The court sustained the objection. Conceding that the question was proper, and waiving the omission of an avowal that the witness would have answered affirmatively, it would seem sufficient to say the ruling of the court could not be and was not prejudicial.

The point is made that questions asked several witnesses if they knew the general reputation of defendant Dills for truth and veracity and morality were not confined to the period before the alleged commission of the offense, instead of relating to the present. Dills had offered himself as a witness, and his reputation in the

particulars asked about was brought in question to affect his credibility as such, as the court advised the jury. Hence that reputation as of the time he was testifying was a proper subject of inquiry. Shell v. Commonwealth, 245 Ky. 223, 53 S. W. (2d) 524.

The instruction relating to proof beyond a reasonable doubt followed the language of section 238, Criminal Code of Practice, which we have often stated is the proper form. It is argued that the court should have given a more elaborate instruction on this point, advising the jury as to the presumption of innocence, the duty to reconcile all the facts and circumstances of the case with that presumption, and to find the defendants not guilty unless the jury believed beyond a reasonable doubt that all of the material facts necessary to constitute the defendants' guilt had been proved. Such an instruction may not have been improper, but that given was sufficient. Hobson on Instructions, sec. 837; Mink v. Commonwealth, 228 Ky. 674, 15 S. W. (2d) 463; Belcher v. Commonwealth, 247 Ky. 831, 57 S. W. (2d) 988.

While defendants' counsel was arguing the case, a witness to whom he had referred spoke out from the audience, "I swore the truth." The court directed the sheriff to remove the offending person. Counsel say they are unable to guess what influence this statement had upon the jury and insist, therefore, that such misconduct was prejudicial to the substantial rights of the appellants. Whatever may have been the effect, the appellants are not now in position to raise the question, for they made no motion to discharge the jury or even to have them admonished by the court.

The judgment is affirmed.