## Mills et al. v. Commonwealth.

April 27, 1943.

A. T. W. Manning for appellant.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

On Sunday, October 9, 1941, Hamp Langdon was shot and killed in Clay County. Appellants, with Woodrow Jackson and Tom Mills, were charged with conspiring to murder, and murdering Langdon, and in separate counts with aiding and abetting. Tom Mills was convicted at a succeeding term; later the indictment as to Jackson was dismissed, and appellants were tried and found guilty, the jury fixing punishment at two years in the penitentiary. On appeal it is insisted that the verdict was contrary to the evidence; that appellants were entitled to a directed verdict, and that the court admitted incompetent prejudicial evidence over appellants' timely objections.

Tom Mills admittedly fired the shots which took Langdon's life. The shooting occurred near the roadhouse of Chester Sizemore on the highway leading from Hyden to Manchester, located 40 or 50 yards from a point where a dirt road left the highway going to a C. C. Camp, a short distance away. The Mills boys, or some of them, lived in the same general direction. There was a large billboard near the intersection.

Boyd and Tom Mills were brothers, and Ben, a cousin, and together with Jackson riding in Boyd's car, left their homes early in the morning and started to Flat Lick church. On their way they stopped at the restaurant and there saw Langdon, Hensley, Smallwood, and Sizemore the owner. The first three named, and perhaps Sizemore, were enrollees at the camp. Nothing happened on this visit. The boys went on to church where

they remained a while, then proceeded to visit around the neighborhood, during which time they again visited the restaurant, and saw the same parties, with the exception of Sizemore, who with his wife had driven to Manchester. Later, about dusk, after more driving they started home, when Jackson suggested he wanted a bite to eat. Boyd protested, but finally stopped the car near the billboard. Jackson and Tom Mills, with another boy who had joined them, went to the restaurant leaving appellants in the car where they waited for a time, then drove the car up near the restaurant. When the first three went in they saw Smallwood who appeared to be drunk, and Langdon "fairly well lit up."

Prior to this no words had passed between any of the parties, except in a friendly fashion. After Ben and Boyd drove up they went into the building, and about this time Sizemore returned. He found nothing out of the way, except that Smallwood was dancing around as "if drunk or playing drunk." There was no evidence of ill-feeling, or any argument which might occasion an encounter. The testimony up to this point harmonizes.

Smallwood, who was apparently intoxicated to the extent that he hardly knew what was taking place, said that about forty minutes before the shooting, at a time when they were outside the building, some one of the Mills' party knocked him down, and relieved him of his Ingersoll watch, a matter about which he seems to have made no complaint at the time. That after this rencounter, and all had gone into the building, Ben was heard to make a threatening remark, which witnesses agree was directed at Smallwood. They all remained in the building for more than a half hour, and it is still agreed that notwithstanding the alleged assault on Smallwood there were no ill feelings. Boyd and Ben went out directly to the car, and were preparing to get in. Tom and others came out, and Smallwood followed, saying that when he got near the signboard Boyd knocked him into a ditch, some distance from the building. He did not recall what happened afterwards. The preponderance of proof is that neither the car nor the two boys were near the billboard, but just a few feet from the restaurant.

Langdon then appeared and said, "Don't hurt that old man." Tom was nearest to him. Langdon had a chair raised over his head, and said, " Leave here you s. o. b's, or I will kill you." Tom retreated toward the

car, Langdon following him. He says Langdon struck him once or twice, and while he was still moving toward the car Langdon following, he drew his pistol and fired four shots, killing Langdon. Officers found the Ingersoll watch in Tom's trousers pocket the next morning. It is in proof, and not denied except by Smallwood, that while he, Smallwood, was dancing around in the building, he dropped the watch and Jackson picked it up and unbeknown to Tom slipped it into his pocket.

It is agreed that outside the words above attributed to Ben, and to Langdon, that nothing else was said by any of the parties calculated to draw attention. It is also clearly shown that Tom was the only person in either crowd who was armed. The Assistant Attorney General frankly admits lack of sufficient evidence to show a conspiracy to harm either Smallwood or Langdon, or to show any pre-existing ill feeling. Also failure to show any act or word by either appellant manifesting aid or encouragement to Tom at the time of the shooting. However, it is correctly suggested that the jury, having the right to weigh the proof, should not have its verdict set aside, unless there appears prejudicial error.

Counsel for accused argues that the testimony of Smallwood to the effect that prior to the shooting, and at a time when Langdon was not present, and Tom was not shown to be present, the Mills boys had him down on the ground and had robbed him, was incompetent and prejudicial. Likewise his statement that he was knocked down by Ben Mills shortly before the shooting took place. This argument was also directed to testimony as to the finding of the watch in Tom's pocket the following morning.

The contention is that the first rencounter (if there was one) was a totally separate offense, and had no connection with the crime charged. Citing Kinder v. Com., 260 Ky. 534, 86 S. W. (2d) 297; Baker v. Com., 106 Ky. 212, 50 S. W. 54. Under all the facts and circumstances we think this testimony should have been excluded, as well as the officer's testimony relating to the finding of the watch.

The Commonwealth takes the position that evidence of matters occurring within 30 or 40 minutes prior to the shooting, constitute a part of the res gestae. Jones v. Com., 249 Ky. 502, 60 S. W. (2d) 991. That evidence

of other offenses, where it appears that such are a part of the same transaction, so connected with the crime for which defendant is being tried, as to be practically inseparable, is admissible. Jordan v. Com., 240 Ky. 391, 42 S. W. (2d) 509; Thomas v. Com., 185 Ky. 226, 214 S. W. 929.

It is unnecessary to enter into a protracted discussion of the points suggested by the Commonwealth, which correctly state principles. The proof to our minds shows that up to the moment when Langdon threatened and attacked Tom there was no ill feeling between any of them and Langdon. The shooting was, in every sense of the word, in sudden affray between Tommie and Langdon, and strongly tending to show that at the time Langdon was the aggressor. However, it was competent to allow Smallwood to testify as to the alleged assault shortly before Tom fired the shots.

The rule is that a person actively or constructively present when a felony is committed and renders assistance or encouragement to the perpetrator, may be convicted for aiding and abetting. The assistance or encouragement may consist of overt acts or oral expressions. Bradley v. Com., 201 Ky. 413, 257 S. W. 11; Combs v. Com., 224 Ky. 653, 6 S. W. (2d) 1082; English v. Com., 240 Ky. 446, 42 S. W. (2d) 706; Pergram v. Com., 241 Ky. 387, 44 S. W. (2d) 277; Centers v. Com., 254 Ky. 733, 72 S. W. (2d) 423.

Being of the opinion that the evidence presented fails to show any act or word on the part of the appellants which would in legal effect constitute either as an aider and abettor in the homicide, the judgment must be reversed, with directions to grant a new trial, and if the evidence then be the same the court should direct a favorable verdict.