Brooks PARSLEY et al., Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 3, 1954.

J. Milton Luker, London, for appellants.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Judge.

The appellants, Brooks Parsley, William (Bill) Parsley, Jr., and Robert (Bob) Ballenger, were indicted jointly for the crime of maliciously striking and wounding Cookie Durham with intent to kill. At their joint trial all were convicted and sentenced to confinement in the penitentiary for two years. It is argued on this appeal that (1) William Parsley and Robert Ballenger should have been given a directed verdict of acquittal; and (2) the verdict is flagrantly against the evidence as to all three of the appellants and therefore they were entitled to a directed verdict.

Brooks Parsley and William Parsley are brothers and Robert Ballenger is their brother-in-law. Brooks is the son-in-law of Cookie Durham, the prosecuting witness, with whom he did not get along very well. Brooks and Goldie (Mrs. Durham's daughter) have been married about five years. However, they were divorced and remarried. They were living in Dayton, Ohio, at the time of the commission of the alleged crime.

Brooks and Goldie drove from Dayton to Mrs. Durham's home, arriving in the early morning of Saturday, January 8, 1954. He left Goldie with her mother and was supposed to return for her about midnight. However, he did not get back until about 2:00 o'clock Sunday morning. According to the testimony of Mrs. Durham, Brooks, accompanied by his brother William, and Robert Ballenger, came to her home Saturday about midnight. She said he pulled his car up against the door and said he had come to see her about some things she had told Judge Ray Lewis about him. He said, "You will never live over what you told Ray or anyone, and I come to kill you and I am going to kill you before I leave." He then walked up to where she was standing on the steps and knocked her down with his fist. Mrs. Durham said she got up, went back in the house and locked the door. Later she tried to go to the house next door and get help, but William and Ballenger stood at the other doors and

every time she tried to get out of the house they would tell Brooks she was getting away. She stated that Brooks stood outside the front door, cursing and using abusive language; that he said he was going to run his car through the house; and that he kicked and hit the door a number of times. She said she finally got out of the house and was about half way to the neighboring house, which was about 200 yards away, when Ballenger saw her and said, "There she goes." Brooks overtook her and hit her three times with a plank about four feet long and three inches wide. She got up and went back in the house and Brooks stood outside cursing and shouting. She said Brooks took another plank and broke all the panels out of a panel window. Goldie finally agreed to go back to Dayton with him and they left.

The appellants offered evidence to the effect that it was raining the night in question so Brooks drove down near the front door of the house so Goldie would not get wet when she came out to the car. Goldie refused to go back to Dayton with him because he was late. They talked a few minutes and Mrs. Durham came running out of the house with a rock or brick, saying, "Get your dam car out of there." Brooks said he jumped out of the car and took the rock from her. He and Goldie began arguing and Mrs. Durham took his keys out of the car. Brooks took the keys from her and then he and Goldie began arguing again. He gave her a push and she fell back into Mrs. Durham and they both fell to the ground. William then got out of the car and told Brooks not to hit a woman in front of him. Brooks and William got into a fight which stopped when Brooks saw Mrs. Durham with a shotgun which Goldie was trying to take from her. Goldie succeeded in getting the shotgun and they went inside the house and locked the doors. Mrs. Durham finally consented to let Goldie talk to Brooks through a window. They were talking at the window when Mrs. Durham "flew mad" and said, "I broke your dam window out, break mine out." (She had broken a win-

dow out of Brooks' house in Dayton). So Brooks picked up a stick and broke the window out. He persuaded Goldie to go back to Dayton with him and they left. Brooks denied hitting Mrs. Durham with his fist or with a stick or plank. William and Ballenger denied watching the doors for Brooks. William said the only time he got out of the car was when he told Brooks not to hit a woman in front of him. Ballenger said he was out of the car only when he asked them to leave.

Scottie McClure, a radio operator for the Kentucky State Police at London, testified that Mrs. Durham came to the police barracks about 4:00 a. m. of the Sunday in question. He stated that the left side of her face was bruised and swollen and she said her right side and hip were hurt. His testimony was corroborated by T. H. Brown, a state trooper, and by Boyd Boggs, the County Judge of Laurel County.

Dr. Boyce Jones examined Mrs. Durham the following Wednesday. His description of her injuries follows: "* * * on the left face she had bruises and discoloration that extended from the hair line to just beneath the chin on the neck. She, also, had a large bruise with discoloration of the skin on the left chest, approximately in the area of the collar bone. She, also, showed numerous small bruises and discolorations on her legs, and particularly the right leg, from the thigh down to the ankle."

We will consider first the contention that the verdict is flagrantly against the evidence. Our rule is that any evidence of substance which goes toward the establishment of guilt is sufficient to carry a case to the jury and to sustain a conviction. Taul v. Commonwealth, Ky., 249 S.W.2d 45; Burgin v. Commonwealth, 311 Ky. 728, 225 S.W.2d 293. In view of the testimony of Mrs. Durham, the State policeman and Dr. Jones, we think there was ample evidence to take the case to the jury.

Whether William Parsley and Robert Ballenger were entitled to a di-

rected verdict, because they took no part in the affray, must be determined from the testimony of Mrs. Durham. She said that they assisted Brooks by informing him where she was when she was trying to leave the house. The testimony of Mrs. Durham concerning their acts was sufficient to make an issue for the jury as to whether they aided and abetted Brooks in the commission of the crime. The rule is that a person who is actively or constructively present when a felony is committed, and who renders assistance or encouragement to the perpetrator, may be convicted for aiding and abetting him. The assistance or encouragement may consist of overt acts or oral expressions. Mills v. Commonwealth, 294 Ky. 92, 171 S.W.2d 38; Crabtree v. Commonwealth, 312 Ky. 738, 229 S.W.2d 752. It is apparent, therefore, that William Parsley and Robert Ballenger were not entitled to a directed verdict.

Judgment affirmed.