Charles Virgil WHEELER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

April 17, 1964.

Rehearing Denied Nov. 5, 1965.

566

Core, Vimont & Combs, John Y. Brown, Brown, Sledd & McCann, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., John B. Browning, Asst. Atty. Gen., Frankfort, Paul Mansfield, Commonwealth's Atty., Lexington, for appellee.

DAVIS, Commissioner.

Charles Virgil Wheeler seeks reversal of his conviction in the Fayette Circuit Court of the offense of aiding and abetting an unknown person commit the crime of armed assault with intent to rob. Appellant has been sentenced to imprisonment for twenty-one years upon the jury's verdict of his guilt of the offense. KRS 433.150.

Appellant rests his appeal upon four claimed errors: (1) the indictment was defective for failure to name the principal or give a description of his acts or participation in the crime charged; (2) there was a fatal variance between the allegations of the indictment and the proof; (3) appellant was denied the constitutionally guaranteed speedy trial; and (4) the evidence does not support the verdict.

On September 8, 1961, T. E. King was on duty as night auditor and desk clerk at Springs Motel at Lexington. About 5:30 a. m., he responded to a knock at the door, and unlocked the door to admit a man who told him he wished to pay his bill and check out of the motel. King then locked the door, leaving the key in it, and started to go behind the desk to attend the matter of

checking out the "guest" when the latter put a .45 automatic pistol in King's back. King then understandably responded to the commands of the intruder; King was required to lie face down upon the floor of the dining room. The intruder, whose identity has never come to light, placed napkins across King's mouth, and tied King's hands and feet. Just prior to tying King, the intruder kicked him in the face and directed him to lie in such manner as his face would be flat on the floor.

King testified that he heard noises from the motel lobby indicating the prizing open of the cash register and some cabinets in the office. After about five minutes a man came in and kneeled down behind King and asked him whether he was all right; upon King's telling him that he was all right, this man reached into King's pocket and removed his card case—there was no money in it. Then the man told King: "You lay there and nothing will happen to you." King then heard "them" take a crowbar "or something" and prize open a cash register in the dining room, just behind where he lay; then the intruders left. King was easily able to free himself, and immediately telephoned the police. The officers reached the scene about five or ten minutes later.

Examination of the motel premises by the police revealed that checks and cash aggregating about $900 had been taken. King did not know, nor was he ever able to identify the first man who came in the motel office. However, he told the police that the man who had asked him whether he was all right was the appellant. King explained that he had known appellant as a frequent guest at another motel during times of King's employment there. He asserted that he was quite familiar with the voice of appellant, and that he recognized appellant as the man who had spoken to him and removed the card case from his pocket. At the trial King said that appellant's voice is distinctive and that he had no doubt of the accuracy of his identification. It developed that King had not talked with appellant for about one year before the robbery. On the next day after the robbery, King identified a photograph of appellant at the Lexington police station.

At 11:40 p. m. on September 8, 1961 (the day of the robbery), appellant was arrested at Ashland while aboard a train bound for Columbus, Ohio. Search of appellant was made incident to that arrest; in his billfold were found two checks, each of which was shown to have been among the articles taken from the Springs Motel in the robbery just described. The checks were in sums of $6.18 and $97.00, respectively. Appellant claims that he acquired the checks, with some others, at about 3:00 or 3:30 p. m. September 8, 1961, from a man he named as either James Lawson or James Lawrence —he was not sure which. Appellant said that he cashed checks in the total sum of about $186 for Lawson-Lawrence at a restaurant in Portsmouth, Ohio, on the occasion mentioned. He offered no plausible explanation as to the absence of an endorsement of Lawson-Lawrence on the checks. Appellant's own evidence, supported by testimony from his wife, tended to establish an alibi. He insisted that he was in Huntington, W. Va., at the time of the robbery, and had not been in Lexington for four or five months before the robbery date.

The indictment was returned by the Fayette County grand jury October 11, 1962, and in pertinent part is as follows:

"The Grand Jury * * * accuses Charles Virgil Wheeler of the crime of unlawfully, maliciously and feloniously aiding and abetting a person unknown to this Grand Jury in an unlawful, malicious and felonious assault with an offensive weapon upon T. E. King with the felonious intent to rob the said T. E. King committed as follows, viz: That said person unknown to this Grand Jury * * * did with an offensive weapon, to-wit a pistol, unlawfully, maliciously and feloniously make an assault upon T. E. King, with

the felonious intent then and there to rob him, the said T. E. King of money or property of value, and that the said Charles Virgil Wheeler was then and there present at the time of said assault and did unlawfully, wilfully and feloniously aid, abet, advise, counsel and encourage the said person whose name is unknown to this Grand Jury in the commission of said crime * * *"

■ Appellant asserts that failure to name the principal offender is a fatal deficiency in the indictment. In support of his contention he relies on Mulligan v. Com., 84 Ky. 229, 1 S.W. 417, and Christian v. Com., Ky., 255 S.W.2d 998. In Howard v. Com., 110 Ky. 356, 61 S.W. 756, it was noted that the principle enunciated in the Mulligan case was subject to the reasonable exception that is presented here. The Howard case specifically recognized the validity of an indictment naming an unknown principal. Smith v. Com., 262 Ky. 6, 89 S.W.2d 3, stands for the same proposition. We conclude there is no merit in this phase of appellant's contentions.

■ The related attack on the indictment also fails. Appellant contends that the indictment does not sufficiently detail the activities of the unknown principal to satisfy the requirements of Sections 122(2) and 124(4) of the Criminal Code, in effect when the indictment was presented. As frequently pointed out, the object of the indictment under the former Criminal Code is to inform the defendant of the offense with which he stands charged; this may be done by a statement of the acts constituting the offense in such manner as to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case. Smith v. Com., 262 Ky. 6, 89 S.W.2d 3. The quoted language of the indictment adequately recites the description of the acts of the unknown principal as well as the conduct of the accused appellant.

The position is taken that since the indictment charges that the crime was committed with the intent to rob T. E. King of money or property, there was a fatal variance when the evidence reflected that the items taken were assets of Springs Motel. In support of this argument, appellant cites Lissenbee v. Com., 198 Ky. 639, 249 S.W. 782; Williams v. Com., 314 Ky. 33, 234 S.W.2d 148; Sturgill v. Com., Ky., 293 S.W.2d 730, and cases from other jurisdictions.

In Lissenbee the indictment charged robbery from Felix Turner; the proof showed robbery from Felix Napier. This was held to be a material variance—not on the theory that the title to the taken property was the crux of the matter, but that the act of robbing Felix Napier is not the same act as robbing Felix Turner. Thus, the accused could not properly know what defense to prepare, nor would prosecution under the Lissenbee indictment afford a defensive bar to subsequent prosecution for robbing Felix Napier. In the case at bar it is charged and proven that the crime under investigation is the armed assault of T. E. King with intent to rob. This prosecution effectively bars further prosecution of this appellant for the same offense.

Williams v. Com., 314 Ky. 33, 234 S.W. 2d 148, involved prosecution for grand larceny. The indictment charged that the items stolen were personal property of Inland Steel Company. On proof, it developed that an overcoat which had been taken from the store of Inland Steel was in fact the individual personal property of Sam Wallen—not Inland Steel. Since the accused's connection with the offense was based on that overcoat, we held that there was fatal variance. Sturgill v. Com., Ky., 293 S.W.2d 730, follows Lissenbee and Williams; the fatal variance in that larceny prosecution lay in the fact that the indictment charged theft of property owned by George Evans, whereas the proof showed the property belonged to Glo Valley Coal Corporation.

 

The case at bar is not ruled by the cases just mentioned. Here the offense charged is armed assault with intent to rob. KRS 433.150. We have held that this offense is not the same offense as robbery, and that the gravamen of the crime denounced in KRS 433.150 is the assault. Adams v. Com., Ky., 264 S.W.2d 283; Lamb v. Com., 266 Ky. 561, 99 S.W.2d 441; Thomas v. Com., Ky., 291 S.W.2d 550; Riley v. Com., 278 Ky. 732, 129 S.W.2d 581. The offense may be consummated without any robbery—without the taking of any property—it is the assault with intent so to do that constitutes the crime, when that assault is otherwise within the purview of the statute. We conclude, therefore, that there is no merit in the appellant's claim that there was a fatal variance.

Ky. Constitution, Section 11, guarantees an accused a speedy trial. Appellant complains that he was not accorded one. We disagree. As noted, the indictment was returned October 11, 1962. The jury trial was held February 5, 1963. The lapse of four months between time of indictment and trial does not reflect abnormal delay. Appellant cites nothing to support that view. However, he points out that the offense was committed on September 8, 1961, and in his brief states that an earlier indictment had been returned in September, 1961. But there is nothing in this record to present that matter to us for review; we may not consider the unsupported statements in briefs as a part of the record for review. 2A Ky. Digest, Appeal & Error, ■ Review of the record that is before us discloses no effort by appellant to bring the case on for trial at an earlier time, nor any order or motion for continuance in behalf of the Commonwealth. If it were arguable that appellant was denied speedy trial—and we believe that it is not arguable here—it is to be observed that he has taken no step to avail himself of the claimed error. See 14 Am. Jur., Criminal Law, Sec. 138, pages 863–864.

Finally, the appellant insists that the evidence does not support the verdict. The victim, T. E. King, positively identified appellant as present and participating in the offense; appellant was found in possession of two checks taken in the robbery; his explanation of his having them was tenuous at best, and the jury was not bound to believe him. It seems to us that the verdict is abundantly supported by the evidence. It complies with our rule that any evidence of substance which goes toward the establishment of guilt is sufficient to make a jury issue. Parsley v. Com., Ky., 273 S.W.2d 372 and 6 Ky.Dig. 1, Criminal Law, ■

Judgment is affirmed.