## Pelfrey v. Commonwealth.

(Decided Feb. 14, 1933.)

C. A. NOBLE for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The appellant, Martin Pelfrey, was indicted by the Perry county grand jury for the murder of Estill Callahan. He was tried and found guilty of voluntary manslaughter, and sentenced to 10 years in the penitentiary. He appeals.

The facts as produced for the commonwealth and the defendant are practically the same, which in substance are these:

On the 21st day of February, 1932, in Perry county, Ky., and about one-half hour before this homicide, the appellant went to the home of Mrs. Nell Collins, where the deceased was boarding, and asked deceased to go around the hill with him; that some negroes had bothered him. At this time he loaded his pistol and said: "Every negro in Georgia couldn't run over him." Accompanied by deceased, appellant went to the home of Bob Combs, a negro man. What happened there, if

anything, is not shown, but they stayed a while and returned to appellant's home. When they came in, deceased obtained a chair by the fire. Appellant went into the kitchen. Appellant had a pistol, and made some remark to his wife about a negro having done something to him, whereupon she replied that the negro ought to have beaten him to death. The appellant fired two shots at a pan sitting on the stove. The deceased, hearing the shots, went into the kitchen, and attempted to take the pistol from the appellant. They scuffled on the floor for a while, then appellant agreed to give the pistol to deceased if he would let him up. When they were again on their feet, appellant unloaded the pistol and gave it to the deceased, who put it in his pocket. Immediately appellant went into the other room and took a gun from the rack and said: "When I start anything, I finish it; I am going to make that pan dance" (referring to a pan on the stove), and almost simultaneously with these words the gun fired, the bullet striking the deceased, which caused his immediate death.

Apparently appellant and deceased were friends, and no ill feeling between them was noticed. The evidence of appellant and other witnesses tends to show that he (appellant) was drinking at the time the act was committed. Appellant does not deny firing the shot that killed deceased. He pleads as his defense that the killing was accidental. The evidence shows that, when the appellant realized that he had shot deceased, he began to cry and said: "Lord, look what I've done—killed the best friend I've got." He administered to deceased and did all he could for him.

The only grounds urged for reversal are that the court erred in its instructions in failing to give the jury the whole law of the case; the first complaint being that the trial court failed to give an instruction on self-defense.

Appellant does not contend that he shot deceased in self-defense, but bases his defense solely on accidental killing.

We quote the following questions and answers of appellant's testimony:

"* * * Q. Did you pull it off at the time you shot it for the purpose of shooting? A. No sir.

"Q. What did you do? A. I was fixing to shoot at the pan. * * *

"Q. Did you intend to shoot at the time the gun fired? A. No sir.

"Q. Did you intend to shoot Estill Callahan? A. No sir, he was the best friend I had.

"Q. Did you ever have any trouble with him? A. No sir.

"Q. And you worked on the same job with him? A. Yes sir.

"Q. Had you and Estill Callahan ever had any words of any kind? A. No sir, never in our life."

It is a well-settled rule in this jurisdiction that, where the only defense interposed is that the killing was accidental, an instruction on the law of self-defense is not necessary. Cornett v. Commonwealth, 156 Ky. 795, 162 S. W. 112; Hunn v. Commonwealth, 143 Ky. 143, 136 S. W. 144. The trial court did not err in failing to give self-defense instruction.

The next complaint is that the trial court erred in failing to instruct the jury on involuntary manslaughter and defining certain terms used in the instructions. This presents a more serious question.

The correctness of an instruction given must be tested by the evidence. If the facts and surrounding circumstances reasonably show a lack of intention to kill, an instruction on the subject of involuntary manslaughter would be proper. Maulding v. Commonwealth, 172 Ky. 370, 189 S. W. 251, and cases cited therein.

The appellant testified that he and the deceased were good friends; no ill feeling between them; that he was intending to shoot at the pan on the stove; the gun was accidentally discharged. The testimony of other witnesses does not disclose any facts to the contrary.

As to the degree of homicide resulting from the acts of appellant, it was a question for the jury to determine under all the circumstances of the case. Thomas v. Commonwealth, 86 S. W. 694, 27 Ky. Law Rep. 794. In view of the evidence and circumstances, as disclosed in this case, we conclude that the trial court should have instructed the jury on involuntary manslaughter.

It is further insisted that the court erred in failing to define the word "reckless," as used in instruction given by the court. It has been repeatedly held by this court that a failure to define such terms as "reckless," "gross," and "wanton," when used in instructions in criminal cases, is not a reversible error. It follows that the court did not err in failing to define these terms. Hutsell v. Com., 75 S. W. 225, 25 Ky. Law Rep. 262; Metcalfe v. Com., 86 S. W. 534, 27 Ky. Law Rep. 704; Collier v. Com., 160 Ky. 338, 169 S. W. 740; Walker v. Com., 235 Ky. 471, 31 S. W. (2d) 721.

The court on another trial will instruct the jury on willful murder, voluntary manslaughter, and involuntary manslaughter; also on instruction authorizing an acquittal if the killing was accidental. A pattern for these instructions will be found in Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517, and Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164.

The court will define the terms used in the instructions thus: "Willfully" means intentional, and the phrase "with malice aforethought" means a predetermination to do the act, and it is immaterial how long before the act the determination was formed. The words "reckless," "gross," and "wanton," when used in these instructions, mean utterly careless, having no regard for consequences, or for the safety of others, but without malice. The word "careless" means the absence of ordinary care, and "ordinary care" means such care as an ordinarily prudent person would exercise for his own protection under circumstances similar to those described in this case.

In the instructions on voluntary manslaughter, it should be so written as to present the theory of sudden affray or sudden heat and passion, and also wanton, careless, or negligent firing of the gun.

The defendant does not claim he was acting in self-defense; therefore no instruction will be given on this topic.

For reasons indicated, judgment is reversed and remanded for proceedings not inconsistent with this opinion.