# Smith v. Commonwealth.

(Decided Nov. 1, 1935.)

A. T. W. MANNING for appellant.

BAILEY P. WOOTTON, Attorney General, and WM. A. SHU-MATE, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Gilbert Smith, was jointly indicted by the grand jury of Clay county, with Andrew Smallwood, Elihue Smallwood, "and others to the grand jury unknown," charged with the crime of willful murder. Upon his separate trial, he was convicted and his punishment fixed at imprisonment in the penitentiary for life.

By the first count of the indictment, the appellant is charged jointly with Andrew and Elihue Smallwood "and others to the grand jury unknown" with the crime of murder, committed by conspiring and banding together to shoot, kill, and murder Frank Ward, and that the appellant and the named Smallwoods "and others to the grand jury unknown" did, while the said conspiracy existed and in furtherance thereof, shoot and kill the said Ward.

7

By the three further counts of the indictment, it was charged that the three said named and accused parties, the appellant, Andrew Smallwood, and Elihue Smallwood, "and others to the grand jury unknown," jointly committed the murder by therein successively charging that each of them respectively and as principal in turn committed the act itself, while the other two of the three parties named, "and others to the grand jury unknown," advised, aided, and abetted the respectively named principal in killing the said Frank Ward.

The evidence discloses that on the morning of September 30, 1930, between 6:30 and 8 o'clock, Frank Ward was shot and killed when engaged in splitting wood (at a distance of some 250 yards from his house) upon his farm situated at the head of Goose creek, in Clay county, Ky.

It was further developed by the testimony of the commonwealth's witnesses heard upon the trial that the deceased was shot by one Steve Smith, when he was accompanied by the appellant and Andrew Smallwood, and that they all three, immediately after the shooting and killing of Ward by Steve Smith, ran away up the hill to the woods. Further, the commonwealth's evidence shows that these three named parties were seen going or banded together upon two other occasions shortly before the killing, which evidence the commonwealth contends tends to show that they conspired to murder, and did murder, Frank Ward as charged, and also that when Steve Smith fired the shot that kliled Ward their armed presence with him there tended to show that he was at the time of his murdering of Frank Ward aided and abetted therein at this daylight rendezvous by the appellant and Andrew Smallwood.

In support of this theory of the commonwealth, that Ward was killed as the result of a conspiracy had between the appellant and codefendant Smallwoods and "others to the grand jury unknown" and that they were also as further charged the aiders and abettors of Smith in his murder of Ward, is the testimony of four of its witnesses.

According to the testimony of Ward's widow, he was killed in the early morning of September 30, 1933, by being shot through the back while then at work on his farm, some 250 yards from the house, situated at

the head of Goose creek in Clay county, Ky. She testified that she was near the house, feeding the hogs, when she heard the shot and some one cry out, when a little boy came running and told her that Frank was shot, and that she went to him in the field, where she found him dying, and that he lived for only about 30 minutes. She stated that she knew the appellant, Gilbert Smith, who lived about three miles from them over in Knox county; that she saw no one at the time of the killing except two boys, the decedent's fifteen year old son, Lester Ward, and his friend, Leon Hubbard, aged ten.

The second witness, Isaac Hubbard, a neighbor of the deceased Ward, stated that he lives about 350 yards from the accused Andrew Smallwood's house, and that in starting about "good daylight" to Nasby's mill, he had seen the appellant Gilbert Smith, Elihue Smallwood, and some other fellow coming out of Andrew Smallwood's house; that near the house and his barn there was a paling fence, under and by which there was a hole, into which they had darted for hiding behind the fence, when he met and saw them; that they all had large guns and that this place was about 350 yards from where Frank Ward was splitting wood when killed; that at the time he met these men, they were going up the road that goes across the hill, and he indicated that such was the short way to the place in the hollow where Ward was shot and killed.

Lester Ward testified that at the time his father, Frank Ward, was killed, he was playing on the nearby mountainside with his companion, Leon Hubbard, a little ten year old boy; that he saw Andrew Smallwood, Steve Smith, and the appellant, Gilbert Smith, shoot him; and that all three men were armed with guns, but that Steve Smith was the one who shot and killed his father; that after shooting him, all three ran up the hill to the woods; that he knew and recognized them; that he then went up to where his father was lying and found he had been shot, when he went to tell his mother, whom he met as she was coming to him, having heard the shot. He stated that he saw Steve Smith as he laid his gun on the fence and fired the shot that killed his father.

The testimony of Leon Hubbard, the commonwealth's last witness, is practically the same as that of Lester Ward, corroborating him in his account of the

killing, only differing from it in stating that of these three named men he saw on this occasion, only Steve Smith was carrying a gun.

The evidence, on the other hand, for the appellant is in the nature of an alibi. He testified that on the morning Frank Ward was shot, he (the appellant) was not near the place of the killing but was some three or four miles distant therefrom at Nasby's mill, where he had "gone early" with corn and with his father and brother; and that when at the mill he saw and talked with certain people, who testified to his presence at the mill at such time. Also, he denied the entering into of any conspiracy with the named codefendants or with the unknown person (Steve Smith) to kill Frank Ward, or that he was present at the time he was shot or aided and abetted in his killing.

The trial court, upon the conclusion of this evidence and upon the charges made in the indictment, instructed the jury in substance that if they believed from the evidence that the defendants Gilbert Smith, Andrew Smallwood, Elihue Smallwood, and some other unknown person or persons, including the defendant, Gilbert Smith, had conspired together to kill and murder Frank Ward, and that in pursuance and furtherance of such conspiracy, the appellant, with Andrew and Elihue Smallwood and *some other unknown person or persons,* or with any one or more of them, did shoot and kill the said Frank Ward, they should find the defendant, Gilbert Smith, guilty of willful murder as charged in the indictment and fix his punishment, etc.

By instruction No. 2, the jury were instructed, in substance, that if they did not believe from the evidence, beyond a reasonable doubt, that the state of facts as set out in the conspiracy instruction No. 1 existed, yet, should believe from it that the defendant, Gilbert Smith, in Clay county, Ky., and before the finding of the indictment, feloniously shot and killed the deceased, Frank Ward, or if they should believe from the evidence that Andrew Smallwood, Elihue Smallwood, or some other unknown person or persons aforesaid, or any one or more of them, had on the occasion in evidence feloniously shot and killed the deceased, Frank Ward, and that the defendant, Gilbert Smith, was present at the time and of his malice aforethought aided and abetted the person or persons who did shoot and kill Frank

Ward as aforesaid, so to do, then they would find the defendant, Gilbert Smith, guilty of willful murder as charged in the indictment, etc.

Further appropriate instructions were given defining the terms used which were not objected to nor was the question of their propriety raised.

The jury having upon the evidence and these instructions found the defendant guilty, and his motion and grounds for a new trial having been overruled, he appeals.

We will first consider his objection urged that the court erred in giving the conspiracy instruction, for the reason, he alleges, that it is not based on any evidence.

We do not find, upon an examination made of the record, that appellant's criticism of it, as being based upon no supporting evidence, is substantial.

In answer to appellant's attack of it, however, it is to be noted that the jury were by it directed to find the defendant guilty only if they believed from the evidence that he entered into the charged conspiracy. Of course, it may be conceded that it is improper for the court to give an instruction having no basis in the evidence (Logan v. Commonwealth, 236 Ky. 329, 33 S. W. [2d] 25); also, that the verdict of the jury, found upon evidence commanding the court's instruction, must be read in connection with the instruction of the court under which it was rendered (Winstead v. Commonwealth, 236 Ky. 154, 32 S. W. [2d] 749); also, that the court must instruct on any defense which the evidence tends to establish, which is available under the plea of "not guilty," whether supported by defendant's or state's evidence (Vick v. Commonwealth, 236 Ky. 436, 33 S. W. [2d] 297.)

Thus reviewing the conspiracy instruction here given as by such rules authorized, can it be said that it was erroneous as being without basis in evidence, in view of the summary of the evidence adduced upon the trial tending to support it, as hereinabove set out: That the defendant was at the house of one of the Smallwoods and with the named codefendants, but a night or two before Ward was killed; also, that the appellant was seen with the codefendants and Steve Smith, both just before and at the time the latter shot and killed

Ward? It is undenied that the deceased Ward was shot and killed by Steve Smith, and also (it is directly testified by alleged eyewitnesses of his fatal shooting) that he was then and there accompanied by appellant and at least one of the codefendants Smallwood, who fled with him to places of cover and hiding immediately after the fatal shot was fired. Certainly this direct evidence of eyewitnesses conducing to show a corrupt combination of appellant and codefendants is of such substance and probative value as meets the requirement of proof tending to show the existence of a conspiracy between the appellant and codefendants upon this occasion in banding together to kill and killing of the deceased, Frank Ward.

According to the contention of the commonwealth, this evidence was of the substantial character required as proof and did tend to establish that the appellant had entered into a conspiracy to kill Ward and that pursuant thereto the conspirators did kill him and therefore constituted basic evidence, authorizing the instruction.

In the case of Gabbard v. Commonwealth, 159 Ky. 624, 167 S. W. 942, 946, there was a prosecution for homicide wherein six defendants had been jointly charged with the crime in an indictment containing three counts, one of which charged a conspiracy. The evidence on the separate trial of defendant who fired the fatal shot was held sufficient to warrant the court in instructing the jury on the theory of conspiracy. The court, in discussing the evidence heard as being sufficient to prove a conspiracy, said:

"It is well stated in Am. & Eng. Ency. of Law, vol. 6, p. 864: 'It is not necessary, in order that the fact of a conspiracy may be established, that it should be proved by evidence of an express agreement or compact between the alleged conspirators or by direct evidence of any agreement or compact. A conspiracy may be proved inferentially or by circumstantial evidence. Conspiracies, from their very nature, it has been said, are usually entered into in secret, and are consequently difficult to be reached by positive testimony, which renders it peculiarly necessary and proper to permit them to be inferred from circumstances. And the existence of a conspiracy is a question of fact to be determin-

ed by the jury, who should decide from all the evidence whether there is such a combined intent and confederation as constitutes the offense.'

"The same observation is made in the case of Daniel v. Commonwealth, 154 Ky. 601 [157 S. W. 1127], supra, as follows: 'A conspiracy is always difficult to prove. The fact that those contemplating the commission of a crime have banded themselves together for the purpose of committing it is rarely established by direct, positive evidence of such crime, but, in a majority of cases, must be shown by circumstances which, when put together into a composite whole, evidence such a purpose on their part.' "

Also, to like effect, in Canada v. Commonwealth, 242 Ky. 71, 45 S. W. (2d) 834, 837, it was held that evidence of a conspiracy or of aiding or abetting, where two or more defendants are charged as principals in the offense (as here the appellant and his codefendant were), is but evidence of the means of the commission of the crime charged in the indictment. In that case we further said that:

"The Code of Practice, which requires that the crime charged in the indictment be in ordinary and concise language in such manner as to enable a person of common understanding to know what is intended, is sufficiently complied with by charging in the indictment the defendants as principals committed the crime, without adding a count, or paragraph, charging the same principals with a conspiracy to commit it, or with aiding and abetting each other in its commission. This rule is more in conformity with the just and reasonable administration of the criminal law than the technical rule of the common law."

Also, as further said in the Canada Case supra, it may here be said that, "if the witnesses of the commonwealth are to be believed, the conduct of the appellant and his codefendants shows that they were acting at the time in concert and in pursuance of a common purpose, with a predetermination to do the act of shooting" and killing of Frank Ward. "Their actions establish their intent, as well as a conspiracy, and aiding and abetting in the commission of, the crime of willfully and maliciously" murdering Frank Ward.

In our discussion and disposition of the above objection, we have also partially answered and disposed of the further objection urged by appellant as to the propriety of the aiding and abetting instruction criticized as erroneous because (he contends) there was no charge in the indctment against him accusing him of aiding and abetting an unknown person or persons, in committing the offense, but only the named codefendants neither of whom it is conceded, though charged as alleged principals with him in the killing, did in fact kill Ward, but that same was perpetrated by Steve Smith, referred to and described in the indictment as the "person unknown to the jury" who fired the fatal shot, from which it results there was submitted to the jury, by this instructon, the question of his guilt of an offense not charged against him in the indictment.

It is our opinion that the aiding and abetting instruction (set out supra) by its very language sufficiently answers this specious criticism of it. A like contention was presented and so disposed of in the case of Taylor v. Commonwealth, 90 S. W. 581, 583, 28 Ky. Law Rep. 819, relied on by appellant in support of his contention, the court there saying:

"The object of the indictment is to inform the defendant of the offense with which he stands charged; and this, under the Code, may be done by 'a statement of the acts constituting the offense, and in such a manner as to enable a person of common understanding to know what is intended, and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case.' Subsection 2, sec. 122, of the Criminal Code of Practice. * * *

"In order to convict one of aiding and abetting another with a crime, it is necessary either to charge the principal with him in the indictment, or, if this be not done, then the name of the principal should be stated if known, or, if unknown, that fact should appear, and the facts of the aiding and abetting sufficiently set forth. This precise question arose in Mulligan v. Commonwealth, 84 Ky. 229, 1 S. W. 417 [8 Ky. Law Rep. 211], and is the only one discussed in the opinion, wherein, among other things, it is said: 'The object of the indictment is to make known to the accused with what

particular crime he is charged, and that the commonwealth will attempt to prove it as charged. So, to indict both the principal and aider and abettor as principals, they are notified that the commonwealth can and will attempt to prove, in order to make out their crime, that one did the principal act, and the other aided and abetted, and may prepare their defense accordingly. Of if the commonwealth does not choose to indict the principal in the first degree, or for any reason cannot do so, but wishes to indict the aider, and will set forth in the indictment the name of the principal, together with his acts or participation in the crime, then it can be said that defendant is given a statement of the acts constituting the offense charged against him. On the other hand, to indict him as the only perpetrator of the crime, and then on the trial be permitted to prove that he was not guilty of the crime as charged—the actual perpetrator of it—but that some one else was guilty, not named in the indictment, and thus secure a conviction, would certainly violate the rule. Of course, if the party indicted was the perpetrator of the crime, if his act completed it, then the principle contended for does not apply. It is only in the case of aiders and abettors who do not commit the principal fact, whose acts of themselves are not criminal, and, in the nature of things, cannot be, but some third party must do the material act to complete the crime, in order to reach the aider and abettor, that we hold that, in order to convict one as aider and abettor, the indictment must include the principal actor jointly or disclose who he is, together with a description of his acts. Then it can be truly said that the indictment furnishes the defendant with a statement of the facts constituting his offense. Being thus notified, he is given an opportunity to prove in what relation this third party stood to the principal fact, whether guilty or not guilty, whether justifiable or excusable.' ''

We interpret the rule herein announced as being in no wise conflicting with that declared in the case of Lovelace v. Commonwealth, 193 Ky. 425, 236 S. W. 567, to the effect that an indictment must name the offense charged, and that a conviction can be had only for the offense named, Brooks v. Commonwealth, 98 Ky. 143,

32 S. W. 403, 17 Ky. Law Rep. 698, as we conceive Steve Smith was and is "the unknown person" here jointly charged as principal in the offense.

Appellant concludes his brief with the statement that while there are many other errors assigned in his motion and grounds for a new trial, he refrains from any discussion of the other errors assigned or of the defense of the appellant, because of his opinion that these errors pointed out in the instructions given the jury necessitate a reversal of the judgment. Being unable to concur in this conclusion and treating the other points raised by him in his motion and grounds as thus abandoned and waived by him, our conclusion is that his criticism argued and insisted upon of the instructions is without merit and is very definitely but adversely answered by the principles and rules announced in the cases above cited, which we are of the opinion are both applicable and controlling of the one question here presented by him as to the propriety of the instructions here given.

Therefore, finding no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.