Christina M. GRIMES, Appellant,

v.

William E. McANULTY, Judge, Jefferson
Circuit Court, Appellee,

and

Commonwealth of Kentucky,
Real Party in Interest.

No. 95–SC–745–MR.

Supreme Court of Kentucky.

Oct. 2, 1997.

Rehearing Denied Jan. 22, 1998.

Richard Heideman, The Heidman Law Group, P.C., Washington, for Appellant.

A.B. Chandler III, Attorney General, C. Lloyd Vest II, Assistant Attorney General, Frankfort, McKay Chauvin, Louisville, for Appellee.

GRAVES, Justice.

Appellant, Christina Grimes, appeals as a matter of right from an order of the Court of Appeals denying her petition for a writ of prohibition. In her petition, Appellant seeks to prevent a retrial of her murder indictment on the grounds of double jeopardy. After hearing oral arguments and reviewing the record, we affirm the Court of Appeals.

James Grimes was shot to death in his home in Jefferson County on July 2, 1992. His wife, Appellant, was accused of causing his death and was charged with murder. A trial by jury was held in the Jefferson Circuit Court from July 12 through July 22, 1994. Appellant was the last witness to testify in her defense. At the conclusion of her direct examination the Commonwealth moved for a mistrial and, over the objection of Appellant, the motion was granted. When the trial judge proposed to schedule a new trial date, Appellant petitioned the Court of Appeals for a writ of prohibition, claiming retrial would cause her "for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V; Ky. Const. § 13. The Court of Appeals denied the petition and Appellant appealed to this Court as a matter of right. Ky. Const. § 115.

A writ of prohibition is akin to mandamus, which may only be granted when no other adequate remedy by appeal exists and, absent relief, a great injustice will occur. *Haight v. Williamson,* Ky., 833 S.W.2d 821 (1992), *cert. denied,* 507 U.S. 925, 113 S.Ct. 1296, 122 L.Ed.2d 687 (1993). In *Macklin v. Ryan,* Ky., 672 S.W.2d 60 (1984), this Court established that such a writ is appropriate when an accused is seeking protection from a retrial when a mistrial was inappropriately ordered. "Since a mistrial, by definition, does not dispose of the merits of a case or necessarily preclude future litigation, the ap-pellant did not have an adequate remedy by appeal from the mistrial order." *Id.* at 61.

The constitutional proscription against double jeopardy protects citizens *inter alia* from being prosecuted again for an offense for which a former prosecution resulted in either an acquittal or a conviction which has not been subsequently set aside. KRS 505.030(1). If, as here, the former prosecution was terminated by mistrial after the first witness was sworn and before the verdict was rendered, a retrial is precluded if the mistrial was granted without the defendant's consent and in the absence of a manifest necessity to do so. KRS 505.030(4); *Nichols v. Commonwealth,* Ky., 657 S.W.2d 932 (1983), *cert. denied,* 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984).

The concept of "manifest necessity" was first enunciated in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). It recognizes the right of a defendant to have a trial completed by a particular tribunal which has been duly and legally selected to try him. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *Baker v. Commonwealth,* 280 Ky. 165, 132 S.W.2d 766, 768 (1939). "[I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 557–58, 27 L.Ed.2d 543 (1971). The most common example of "manifest necessity" to grant a mistrial is when a jury is deadlocked and unable to reach a verdict. *E.g., Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672 (1985), *cert. denied,* 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986); *Nichols v. Commonwealth, supra; Commonwealth v. Crooks,* Ky., 655 S.W.2d 475 (1983). However, it has also been found to exist when the defendant introduces improper evidence which prejudices the Commonwealth's right to a fair trial. *Chapman v. Richardson,* Ky., 740 S.W.2d 929 (1987); *Stacy v. Manis,* Ky., 709 S.W.2d 433 (1986).

In reviewing a decision to grant a mistrial, the trial court must have a measure of discretion. "The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that at any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred." *Arizona v. Washington,* 434 U.S. 497, 513, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978). Furthermore, "[t]he adoption of a stringent standard of appellate review in this area ... would seriously impede the trial judge in the proper performance of his 'duty, in order to protect the integrity of the trial....'" *Id.* (Quoting *United States v. Dinitz,* 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976)).

> There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias. He has seen and heard the jurors during voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Washington, supra,* at 513, 98 S.Ct. at 834 (quoting *Wade, supra,* at 687, 69 S.Ct. at 836).

Because a constitutionally protected interest is inevitably affected by any mistrial decision, the trial judge must exercise "sound discretion" in declaring a mistrial. *Perez, supra.*

In his written order, the trial judge explained that there was a manifest necessity to discharge the jury because of the introduction by Appellant of voluminous evidence of the victim's prior acts of domestic violence and abuse directed against Appellant and her children. The judge stated that the admissibility of such evidence was conditionally predicated upon a showing that Appellant acted in self-defense. KRS 503.050(3). However, at the close of Appellant's testimony the court concluded that Appellant had only established that the shooting was accidental, and thus was not entitled to introduce evidence of the victim's prior bad acts.

> This Court could not have required the defendant to disclose her ultimate testimony prior to taking the witness stand nor could this Court have required her to testify prior to offering any other proof. However, having now testified that she did not intend to fire the gun, i.e. it was an accident, the entire offer of proof of specific acts of domestic violence, not only becomes irrelevant, but *inflammatory.* The Court, prior to defendant's presentation of her defense, could not have precluded her offer. However, at this point having heard her testimony the Court now finds that her offer of proof in support of self defense was a subterfuge to avoid the restrictions on character evidence otherwise applicable.

The Court concluded that the admission of the evidence was prejudicial to the Commonwealth, in that it conveyed to the jury that the "victim deserved to die", and therefore no remedy other than a mistrial was adequate.

Thus, in deciding whether a manifest necessity did, in fact, exist to justify a mistrial in this case, we must necessarily decide whether the evidence presented at trial would have supported an instruction on self-protection. Specifically, is an accused entitled to the defense of self-protection notwithstanding her testimony that the victim's death was the result of the unintended discharge of a weapon?

Appellant relies primarily on this Court's decision in *Pace v. Commonwealth,* Ky., 561 S.W.2d 664 (1978). In *Pace,* the defendant was indicted for the shooting death of her husband. The defendant testified at trial that she and her husband were fighting over the gun when it accidentally discharged. She further testified that the victim had threatened to kill her and her daughter. The trial court refused to give a self-defense instruction in light of defendant's testimony of the accidental discharge. This Court reversed the conviction, holding that despite defendant's testimony of accident, where other evidence is introduced indicating the defendant could have also acted in self-defense,

a self-defense instruction is warranted. *Id.* at 667.

We perceive marked differences between *Pace* and the present case. Notably, although the defendant in *Pace* testified that the shooting was accidental, other testimony presented established that prior to the incident, defendant had told a relative that she had thrown a glass at the victim during an argument and "If he keeps on, I'm going to kill him." Further, the defendant had initially informed authorities that the victim killed himself. Thus, despite the defendant's ultimate testimony that the shooting was accidental, other evidence presented at trial supported the possibility that she intentionally shot her husband.

Here, we find nothing in the testimony and evidence presented to support a finding that Appellant intentionally shot her husband. During voir dire, defense counsel informed the jury that Appellant's defense would be accident. During opening statements, counsel again stated that Appellant was a "victim of accident." In the 911 tape which was introduced, Appellant said, "I just shot my husband ... on accident." EMS tapes, which were also introduced, contained Appellant's statements that "He told me to shoot him", "I didn't know it was loaded", and "I didn't mean to." Officer James Gray, who was the first to arrive at the scene, testified that Appellant told him the victim gave her the gun and told her to shoot him. She told Officer Gray, "I never even knew it was loaded or nothing" and "I don't know anything about guns or any shooting or anything like this."

When Appellant took the witness stand, she recounted the victim's abuse of her and her children. Defense counsel elicited information concerning bad acts of the victim from the 1970's up until the time of his death. Finally, Appellant described the events of July 2, 1992. She stated that she and her husband had a conversation at their home regarding a telephone number that she had found on his beeper. They talked for awhile and then he left for a period of about four hours. According to Appellant, when her husband returned, he attacked her and dragged her outside to the patio. He then returned to the house. Appellant testified that she asked her husband where his gun was, because she knew he usually carried it with him at all times. Appellant's husband went to the kitchen, got the gun and brought it back. Appellant testified,

I put my hand out and I said, 'Please let me have the gun, let me have the gun.' And he put the gun in his [left] hand and he turned it around [toward himself] ... and all I did was went like this [reaching for the gun] and it went off. I fell back after he put the gun in my hand ... and it went off.

Appellant testified that she thought her husband was playing a game when he fell; she did not realize he had been shot until she saw the blood.

A defendant is entitled to have the jury instructed on the merits of any lawful defense which he or she has. *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988); *Curtis v. Commonwealth*, 169 Ky. 727, 184 S.W. 1105 (1916). However, the entitlement to an affirmative instruction is dependant upon the introduction of some evidence justifying a reasonable inference of the existence of a defense. *Brown v. Commonwealth*, Ky., 555 S.W.2d 252, 257 (1977); *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807, 812 (1977), *overruled on other grounds, Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981).

After reviewing the evidence and testimony presented, we are of the opinion that nothing was presented to indicate that Appellant acted in self-defense. We recognize that our holding in *Pace, supra,* may be read to authorize a self-defense instruction notwithstanding a defendant's claim of accident. "The mere fact that these defenses are inconsistent ... should not preclude a jury from considering both theories under appropriate circumstances." *Id.* at 666. However, despite the fact that the defendant's testimony in *Pace* rested on accident, other evidence introduced created an issue as to whether she acted in self-defense. That simply is not the case here. Therefore, we conclude the trial judge acted well within his discretion in determining that the introduction of prior bad acts of the victim, in the absence of any

evidence of self-defense, was so inflammatory and prejudicial as to create a manifest necessity for mistrial. We again defer to the language set forth in *Arizona v. Washington, supra,*

> The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding. Since he exercised "sound discretion" ... the mistrial order is supported by the "high degree" of necessity which is required in a case of this kind.

*Id.* at 515–516, 98 S.Ct. at 835.

In this opinion we have concluded that the trial judge appropriately determined the law under *Pace, supra,* and, although inconsistent defenses could have been appropriate, such was not the case given the evidence presented. However, it is our opinion that the holding of *Pace* is fundamentally flawed. A defendant who affirmatively asserts the defense of accident cannot also claim self-protection.

█ Prior to our decision in *Pace,* this Court had repeatedly affirmed the general principle that when a defendant in a homicide prosecution admits the killing, but claims it was an accident, he is not entitled to a self-defense instruction. *Howard v. Commonwealth,* Ky., 240 S.W.2d 616 (1951); *Howard v. Commonwealth,* 260 Ky. 467, 86 S.W.2d 126 (1935); *Pelfrey v. Commonwealth,* 247 Ky. 484, 57 S.W.2d 474 (1933); and *Maiden v. Commonwealth,* 203 Ky. 446, 262 S.W. 588 (1924). By its very nature, self-defense relates to an intentional or knowing use of force and not an accidental shooting. "In Kentucky we have long recognized as fundamental that when the accused has 'admitted the shooting' and then 'attempted to justify it on the grounds of self protection ... there is no evidence that his actions were anything other than intentional.'" *McGinnis v. Commonwealth,* Ky., 875 S.W.2d 518, 521 (1994) (quoting *Shannon v. Commonwealth,* Ky., 767 S.W.2d 548, 548–549 (1988)). Pursuant to self-defense the defendant admits, but seeks to justify, the intentional commission of the act, whereas the essence of an accident defense is the defendant's contention that he did not intentionally commit the act the state alleges constitutes a crime.

We are persuaded by the rationale of Justice Stephenson in his dissent to the *Pace* opinion,

> Particularly as here in an unwitnessed killing, I do not believe that there is a rational basis for a jury to infer self-defense where the defendant herself testified that the killing was accidental and did not testify that she intentionally killed the deceased in fear of serious bodily harm or death at his hands. Accident is involuntary; self-defense is intentional. It is recognized by all that these defenses are contradictory.

*Id.* at 670.

Stephenson further opined that,

> The majority opinion will impose an intolerable burden upon the trial bench in attempting to determine if the circumstances of cases such as this warrant a self-defense instruction. The practical solution to this problem will undoubtedly result in the various trial courts' giving a self-defense instruction if requested in every case where death resulted during the course of a struggle or altercation.

*Id.*

█ We therefore conclude that the defenses of self-defense and accident are "mutually exclusive, the former contemplating an intentional act leading to death while the latter negatives such intention." *Id.* at 671. A defendant cannot assert accident yet alternatively claim an intentional act done in self-defense, without affirmatively presenting evidence of self-defense. Therefore, we overrule *Pace.*

The decision of the Court of Appeals denying Appellant's writ of prohibition is affirmed. Retrial of Appellant under the

murder indictment is not barred under the principles of double jeopardy.

GRAVES, JOHNSTONE, LAMBERT and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., concurs by separate opinion in which GRAVES, and LAMBERT, JJ., join.

COOPER, J., dissents by separate opinion in which STUMBO, J., joins.

STEPHENS, C.J., dissents separately without an opinion.

JOHNSTONE, Justice, concurring.

I concur in the majority opinion but take issue with the dissenting opinion.

The dissenting opinion advocates, with much emotion, that the Kentucky Legislature has given victims of spouse abuse certain rights which they may assert in defense of assault and other crimes including murder. It is suggested that the majority opinion erodes such protection and essentially "emasculate[s] the presumption of innocence." However, it is unlikely that the Legislature intended to grant victims of spousal abuse the unfettered right to retaliate without consequence.

The dissenting opinion's assertion that the majority opinion "represents not only an erosion of [the] progress, but a significant and unconstitutional retreat" is unfounded. The dissenting opinion is quick to point out that a defendant is entitled to an instruction on any defense which the evidence tends to establish, whether supported by the defendant's evidence or the Commonwealth's. However, in this case, the inescapable fact relied upon by the majority is that, despite the overwhelming evidence of spousal abuse on the part of the victim, there was absolutely no evidence of self-defense by Appellant. Appellant's statements to police indicated that she accidentally shot her husband. Further, Appellant testified at trial that the gun "just went off" and she did not even realize her husband had been shot until she saw blood. At no point, prior to or during trial, did Appellant ever contend that she intentionally fired the gun in self-defense out of fear for her life. At best, under Appellant's and the dissenting opinion's strained interpretation of her statements immediately after the incident, one could reach the conclusion that Appellant intentionally, although not in self-defense, shot her husband.

Whereas a defendant under some circumstances may be entitled to both an instruction on self-defense and accident, the evidence in this case clearly did not support an instruction on self-defense. The dissenting opinion misconstrues the majority opinion in concluding that it stands for the proposition that a defendant must specifically claim to have acted in self-defense. Rather, the majority holds that there must be *some* evidence introduced to support the instruction. Evidence of the victim's abuse of Appellant, standing alone, does not satisfy that burden. Indeed, the trial court was correct in finding that the admission of the evidence conveyed to the jury that the "victim deserved to die."

The right of the people of Kentucky to a jury verdict finding this defendant guilty or not guilty would be utterly denied by the opinion voiced in the dissent. Under the dissent's analysis, the defendant would walk away without ever having faced a jury verdict notwithstanding the very substantial evidence that she murdered her husband. The rule which would emerge from the dissent is that the Commonwealth must never move for a mistrial for if some appellate court later thinks the trial court got it wrong, regardless of the reasoning which prompted the order of mistrial, retrial would be precluded.

In ruling on the motion for mistrial, the trial judge was in the unique position to serve as a fact finder and assess the factors relevant to the determination of whether a mistrial was indeed appropriate. At this stage of the proceedings, in the absence of a crystal ball, we should not circumvent the well-reasoned judgment call of the trial judge in granting a mistrial. It is evident from the opinion and order that the judge exercised sound discretion in reaching such decision.

While the dissent paints the majority opinion as discarding "oft-cited and highly respected precedent," it completely ignores the fact that the trial judge and a unanimous panel of the Kentucky Court of Appeals

reached the same conclusion as the majority of this Court. Appellant will have her day in court during which she can present her defenses in an appropriate manner. At that stage, it is up to the jury to pick and choose which parts of her statements to believe. Although it is easy to sympathize with Appellant's situation, our system dictates that the Commonwealth has the same right to a fair trial as does a defendant. Clearly, this did not occur in the original proceedings and retrial is necessary.

GRAVES and LAMBERT, JJ., join this concurring opinion.

COOPER, Justice, dissenting.

In *Commonwealth v. Rose*, Ky., 725 S.W.2d 588 (1987), *cert. denied*, 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 80 (1987), a prosecution of a battered wife for the murder of her deceased husband, we authorized introduction of evidence regarding the "battered wife syndrome" to explain why a person suffering from that syndrome would perceive that certain conduct was necessary in her self-defense, even though one not suffering from that condition might believe or behave otherwise. In 1992, as part of a package of legislation intended to improve the plight of battered spouses, the General Assembly amended the self-protection statute to authorize the introduction of evidence of prior acts of domestic violence and abuse perpetrated against the defendant by the alleged victim of a homicide or assault. KRS 503.050(3) (1992 Ky. Acts ch. 173 § 2). Thus was the existence of a sordid family secret rescued from the dark ages of criminal jurisprudence. Finally, a battered spouse was entitled to the same presumption of innocence and due process of law afforded to the most hardened of criminals. The majority opinion rendered in this case represents not only an erosion of that progress, but a significant and unconstitutional retreat.

### 1.

The majority correctly notes that a mistrial can be granted in a criminal prosecution over the defendant's objection only if there exists a manifest necessity to do so, KRS 505.030(4), *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 166 (1824), *Nichols v. Commonwealth*, Ky., 657 S.W.2d 932 (1983), *cert. denied*, 465 U.S. 1028, 104 S.Ct. 1289, 79 L.Ed.2d 691 (1984), and that one example of "manifest necessity" is when the defendant introduces improper evidence which prejudices the prosecution's right to a fair trial. *Chapman v. Richardson*, Ky., 740 S.W.2d 929 (1987); *Stacy v. Manis*, Ky., 709 S.W.2d 433 (1986). Of course, it is a corollary to this principle that if the evidence was properly admitted, *Taylor v. Dawson*, 888 F.2d 1124 (6th Cir.1989), *cf. Leibson v. Taylor*, Ky., 721 S.W.2d 690 (1986), *overruled on other grounds, Shaffer v. Morgan*, Ky., 815 S.W.2d 402 (1991), or if the evidence did not prejudice the Commonwealth's case, *Lillard v. Commonwealth*, Ky., 267 S.W.2d 712 (1954), then the discharge of the jury was without manifest necessity and a retrial is precluded by the constitutional proscription against double jeopardy. It is suggested in Justice Johnstone's concurring opinion that an erroneous grant of a mistrial ought not preclude a retrial if the error was (as here) the result of an honest mistake. However, there is no "good faith" exception to the constitutional requirement of "manifest necessity." The two concepts are mutually exclusive. If the trial judge "got it wrong," double jeopardy applies.

The issue then becomes whether evidence of the deceased's prior acts of domestic violence and abuse directed against Appellant and her children was rendered inadmissible and prejudicial *nunc pro tunc* by Appellant's failure to specifically testify that she killed her husband intentionally in self-protection.

### 2.

In its case in chief, the Commonwealth presented evidence to prove the offense of murder, *i.e.*, that Appellant intentionally shot and killed her husband. To this end, the Commonwealth introduced the 911 tape in which Appellant first stated, "I just shot my husband." This was followed by the EMS tape in which Appellant stated that her husband handed her the gun and told her to shoot him, and that, although she did not believe the gun was loaded, she pulled the trigger. A tape recorded statement of Ap-

pellant was introduced in which she stated that she pulled the trigger. Officer James Gray, the first officer on the scene, testified that Appellant told him, "He gave me the gun and told me to shoot him and I did." Officer Charles Grider testified that Appellant told him that her husband handed her the gun and said if you don't believe me, just shoot me, and she shot him.

At the conclusion of the Commonwealth's case, Appellant moved for a directed verdict of acquittal on grounds that the Commonwealth's evidence was insufficient to prove that her husband's death was the result of an intentional act. The trial judge correctly ruled that the Commonwealth's evidence was sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the killing was intentional. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991). The Commonwealth having introduced sufficient evidence of intent to overcome a directed verdict, it was no longer necessary for anyone, especially Appellant, to introduce additional evidence to prove that she intentionally killed James Grimes.

Appellant began her case with voluminous evidence of the deceased's prior acts of domestic violence and abuse perpetrated against Appellant and her children. These included separate incidents in which he personally threatened them with a handgun. Dr. Anna Wilson testified as an expert witness that, in her opinion, Appellant was suffering from the "battered spouse syndrome." The law of Kentucky is clear that if Appellant had at this point chosen not to testify in her own behalf, the evidence introduced by the Commonwealth and Appellant's other witnesses would have sufficed to entitle her to an instruction on self-protection.

Concerning the question of whether or not the appellant was entitled to an instruction on self-defense, we find that in cases of this character the court is required to give such an instruction where the evidence is wholly circumstantial, there is evidence of a struggle, and the accused fails to testify, or, although he does become a witness, he does not testify as to any facts indicating the manner in which the deceased met death.

*Hasty v. Commonwealth,* Ky., 272 S.W.2d 325, 326 (1954); *see also, Pennington v. Commonwealth,* Ky., 344 S.W.2d 407 (1961); *Benson v. Commonwealth,* 290 Ky. 713, 162 S.W.2d 538 (1942); *Rutherford v. Commonwealth,* 76 Ky. (13 Bush) 608 (1878). However, Appellant did choose to testify in her own defense.

Appellant also testified to the deceased's prior acts of domestic violence and abuse. These included a prior incident in which the deceased actually fired his weapon at her five or six times. Appellant then related the incidents leading up to the fatal shooting on July 2, 1992. She testified that her husband stripped her naked and dragged her outside by her hair. She then crawled back into the house to find her husband in the living room. The deceased retrieved his loaded gun from a cabinet and began pointing the gun first at Appellant and then at himself, threatening both of their lives. Appellant testified that she feared for her life and begged her husband to give her the gun. Her description of the fatal event was as follows:

> I put my hand out and I said, "Please let me have the gun, let me have the gun;" and he put the gun in my hand with it turned around [toward him]. And all I did was, I went like that and it went off.

Appellant also introduced photographs of bruises on her body alleged to have been inflicted upon her by the deceased on the night of the fatal incident. At no time during her testimony did Appellant describe the killing as either "accidental" or "intentional," although she admitted telling her daughter and other witnesses on the day of the incident that the shooting was an accident. Seizing upon this admission and ignoring the fact he had already ruled that the Commonwealth, itself, had introduced sufficient evidence of an intentional killing to avoid a directed verdict of acquittal, the trial judge ruled that Appellant could not claim "accident" and still be entitled to an instruction on self-protection. Having reached that erroneous conclusion, the trial judge found that all of the evidence of prior abuse was irrelevant and that its introduction created a "manifest necessity" for a mistrial.

**3.**

Recognizing that the trial judge's decision in this case was directly contrary to the holding in *Pace v. Commonwealth,* Ky., 561 S.W.2d 664 (1978), the majority routinely discards that oft-cited and highly respected precedent, *see, e.g.,* 15 A.L.R.4th 983, 1011 (1982), L. West, *Kentucky Law Survey (Criminal Law),* 74 Ky. L.J. 403, 406, n. 27 (1986), and holds that a defendant (1) cannot claim inconsistent theories, *i.e.,* accident and self-protection, and (2) cannot claim self-protection without specifically admitting that she intentionally killed the deceased. In other words, although the Commonwealth can proceed on alternative theories, *e.g., Bedell v. Commonwealth,* Ky., 870 S.W.2d 779 (1993), *Wells v. Commonwealth,* Ky., 561 S.W.2d 85 (1978), the defendant cannot; and although the Commonwealth can prove its case by circumstantial evidence, *e.g., Davis v. Commonwealth,* Ky., 795 S.W.2d 942 (1990), *Nugent v. Commonwealth,* Ky., 639 S.W.2d 761 (1982), the defendant cannot prove a defense by circumstantial evidence, but must prove it by her own affirmative testimony. If that is to be the law of this Commonwealth, we have effectively emasculated the presumption of innocence.

**4.**

In *Coffin v. United States,* 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895), the United States Supreme Court traced the roots of the presumption of innocence from Deuteronomy through Roman law, English common law, and the common law of the United States.

The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.

*Id.,* 156 U.S. at 453, 15 S.Ct. at 403.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). It has been called the "golden thread" that runs throughout the criminal

law, the "cornerstone of Anglo–Saxon justice," and the "focal point of any concept of due process." S. Sundby, *The Reasonable Doubt Rule and the Meaning of Innocence,* 40 Hastings L.J. 457 (1989). Since the rendition of *Taylor v. Kentucky,* 436 U.S. 478, 483, 98 S.Ct. 1930, 1933–34, 56 L.Ed.2d 468 (1978), every jury in every criminal case tried in Kentucky is instructed that "[t]he law presumes a defendant to be innocent of a crime [and] . . . [y]ou shall find the defendant not guilty unless you are satisfied from the evidence alone and beyond a reasonable doubt that he is guilty." RCr 9.56(1).

At the heart of the presumption of innocence is the requirement that the state must prove beyond a reasonable doubt every fact necessary to constitute the crime with which a defendant is charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Although a state may determine for itself what are the elements of a criminal offense or of a defense thereto, *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), once the state has decided that a fact is so important that it must be proven or presumed, any shifting of the burden of proof to the defendant is a violation of the Due Process Clause. *Id.,* 432 U.S. at 215, 97 S.Ct. at 2329. Our legislature has determined that once evidence is introduced which would justify an instruction on a defense such as self-protection, the Commonwealth has the burden to disprove it beyond a reasonable doubt, and its absence becomes an element of the offense. KRS 500.070(1) and 1974 Commentary thereto; *cf. Brown v. Commonwealth,* Ky., 555 S.W.2d 252, 257 (1977); Cooper, 1 *Kentucky Instructions to Juries,* § 11.07 (Comment). The burden of proof is assigned by including in the instruction on the charged offense the element "That in so doing, he was not privileged to act in self-protection." *E.g.,* Cooper, *supra,* § 3.21.

**5.**

To justify an instruction on a defense, it is not necessary that the evidence would prove the defense beyond a reasonable doubt, or even by a preponderance of the evidence, but only that which could justify a reasonable

232

doubt of the defendant's guilt. *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807, 812 (1977), *overruled on other grounds, Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981), *cert. denied*, 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982). *Pace v. Commonwealth*, *supra*, was not the first case to hold that a defendant is entitled to an instruction on any defense which the evidence tends to establish, whether supported by the defendant's evidence or that of the Commonwealth. *See, e.g., Smith v. Commonwealth*, 262 Ky. 6, 89 S.W.2d 3 (1936); *Vick v. Commonwealth*, 236 Ky. 436, 33 S.W.2d 297 (1930). Nor was it the first case to hold that a defendant may be entitled to an instruction on self-protection, despite his own testimony that the killing was accidental. *Gatliff v. Commonwealth*, 32 K.L.R. 1063, 107 S.W. 739 (1908). The line of cases cited by the majority in support of the proposition that claims of accident and self-protection are incompatible are easily distinguished. As Chief Justice Palmore pointed out in his concurring opinion in *Pace*, *supra*, at 668, the evidence in none of those cases would have justified an instruction on self-protection, none of them overrules *Gatliff*, *supra*, and all of them were decided prior to the adoption of the penal code at a time when the defendant had the burden of proof on the issue of self-protection.

*Pace* and *Gatliff* also are in accord with the enlightened majority of jurisdictions which permit a defendant to claim accident and self-protection as alternative theories. *E.g., People v. Brooks*, 130 Ill.App.3d 747, 86 Ill.Dec. 90, 474 N.E.2d 1287 (1985); *State v. Hill*, 242 Kan. 68, 744 P.2d 1228 (1987); *Commonwealth v. Wilson*, 433 Pa.Super. 28, 639 A.2d 1194 (1994); *Merritt v. State*, 85 Tex.Crim. 565, 213 S.W. 941 (1919). In *State v. Eldridge*, 554 S.W.2d 422 (Mo.Ct.App. 1977), the defendant was permitted to rely on both theories where the evidence would support either theory and the defendant, as here, did not specifically testify that the killing was accidental. On the issue of the necessity of direct evidence to prove self-protection, the Court held as follows:

> In the absence of direct evidence that appellant intentionally shot and killed Davis the State had to rely upon circumstantial evidence of the fact. If the state is

entitled to go to the jury on the circumstantial evidence of a voluntary shooting with intent to kill, the appellant is likewise entitled to submit a circumstantial case of voluntary shooting in self-defense. What is sauce for the goose is sauce for the gander.

*Id.* at 425; *compare State v. Hafeli*, 715 S.W.2d 524 (Mo.Ct.App.1986), in which the defendant specifically testified that the killing was accidental.

Finally, it has never been the law of this Commonwealth that in order to be entitled to an instruction on self-protection, the defendant must specifically claim to have acted in self-defense. In *Alsip v. Commonwealth*, Ky., 482 S.W.2d 571 (1972), an instruction on self-protection was held required by other evidence where the defendant did not testify that he acted in self-defense, but claimed he had no recollection of what happened after he was struck by the victim. And in both *Brown v. Commonwealth*, 308 Ky. 486, 214 S.W.2d 1018 (1948) and *Hamilton v. Commonwealth*, 300 Ky. 246, 188 S.W.2d 435 (1945), the defendants were held entitled to instructions on self-protection despite the fact that both denied killing their alleged victims and claimed alibis.

6.

Although precedent can be overruled with four votes and the stroke of a pen, no court has authority to set aside the jurisprudential cornerstones of due process and the presumption of innocence. Despite the fact that our legislature has seen fit to place the burden of proof of self-protection on the Commonwealth, the majority of this Court now holds that a defendant must affirmatively prove that defense by his or her own testimony and cannot rely on circumstantial evidence or even evidence produced by the Commonwealth. In so doing, we have stripped Appellant of the presumption of innocence and thereby denied her the Constitutional right to due process of law. *Patterson v. New York*, *supra*.

Appellant was entitled to an instruction on self-protection. Thus, she was entitled to introduce evidence of her husband's prior

acts of domestic violence and abuse and there was no manifest necessity to grant a mistrial. Since her retrial is precluded by the Constitutional proscription against double jeopardy, the writ of prohibition should be granted.

STUMBO, J., joins this dissent.