# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 19, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000074-MR

FINAL

DATE 3-12-15 ___ Grant D.C

QUENTIN WILSON                                    APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.       HONORABLE CHARLES LOUIS CUNNINGHAM, JR., JUDGE
NO. 11-CR-002547-01

COMMONWEALTH OF KENTUCKY                         APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

On the evening of August 14, 2011, Appellant, Quentin L. Wilson, and William B. Smith III fired a barrage of gunshots into a crowd of people gathered at Shawnee Park in Louisville. Antonio Lamont Anderson died as a result and two others were seriously injured. Several vehicles were also damaged by the shooting. A bullet entered and lodged in the trunk of one nearby vehicle, narrowly missing Mr. Anderson's four-year-old daughter who was asleep in the backseat. Anderson's pregnant fiancée was also in the car.

Louisville Metro Police Officer Chad Johnson was present during the shooting. Officer Johnson testified that after hearing gunshots, he witnessed Wilson standing with his arm outstretched, firing a handgun into the crowd. The officer also testified that he saw several other muzzle flashes near Wilson. Wilson, Smith, and another individual involved in the shooting fled the scene on foot and Officer Johnson followed. They were eventually apprehended and

arrested. Police officers re-traced the path along which Wilson and his confederates fled and discovered four handguns, three of which were found together underneath a broken tree branch. A ballistics expert determined that several of the projectiles and casings recovered from the crime scene were fired from the recovered handguns.

Wilson and Smith were indicted and jointly tried. The other individual involved in the shooting was a juvenile. A Jefferson Circuit Court jury convicted Wilson of complicity to murder, two counts of criminal attempt to commit murder, two counts of first-degree wanton endangerment, and one count of tampering with physical evidence. The jury also convicted Wilson of being a second-degree persistent felony offender ("PFO"). In addition to the 30 year sentence previously recommended for the murder conviction, the jury recommended an enhanced sentence of 20 years' imprisonment for each attempted murder conviction, seven years for each wanton endangerment count, and five years for the tampering conviction.

The jury recommended that these sentences be served concurrently with each other with the exception of the 30-year sentence for murder, which was to be served consecutively with the other sentences. The total recommended sentence was 50 years' imprisonment. The trial court sentenced Wilson in accord with the jury's recommendation. Wilson now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Two issues are raised and addressed as follows.

## Self-defense Instruction

Wilson argues that the trial court committed reversible error by not instructing the jury on self-protection as an affirmative defense to murder. We recognize that "[o]ur case law regarding the proper standard of review when reviewing alleged errors in jury instructions is inconsistent." *Goncalves v. Commonwealth*, 404 S.W.3d 180, 193 n.6 (Ky. 2013). However, we find no error here under either an abuse of discretion or de novo standard.

Wilson did not present a pre-trial immunity defense. KRS 503.085. He only takes issue with the trial court's denial of his request to instruct the jury under KRS 503.050. That statute provides in part as follows:

> (1) The use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.
>
> (2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant believes that such force is necessary to protect himself against death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055.

"A defendant is entitled to have the jury instructed on the merits of any lawful defense . . . ." *Grimes v. McAnulty*, 957 S.W.2d 223, 226 (Ky. 1997) (citations omitted). "However, the entitlement to an affirmative instruction is dependent upon the introduction of some evidence justifying a reasonable inference of the existence of a defense." *Id.* (citations omitted). In the present case, Wilson contends that reasonable jurors could have concluded that he acted in self-defense based on the following evidence.

3

First, Officer Johnson testified that he heard two gunshots followed by a series of shots. Wilson argues that Officer Johnson did not observe him firing into the crowd until after this initial series of shots, thus indicating that another individual fired the first shots. Furthermore, one of the victims, Norman Bradley Wilson, testified that he heard two or three gunshots and saw seven men shooting guns. Lastly, a firearms examiner testified that at least six handguns had been fired at the scene, some of which were never recovered. According to Wilson, this demonstrates that one or more of the guns had been removed from the scene by the initial aggressor after Wilson returned fire. While only the first argument was presented to the trial court, none of these arguments are convincing.

Wilson did not testify or present a self-defense theory during trial. Instead, defense counsel argued from the outset that Wilson was not one of the shooters in the park and that he did not have a gun. Wilson's multiple pre-trial statements to the police were also introduced as evidence. In one statement, Wilson admitted to being in the middle of the shooting and identified three shooters by name but repeatedly informed the interrogating officer that he did not have a gun. *See Fitch v. Commonwealth*, 103 S.W.2d 98, 102 (Ky. 1937) ("With rare exception it is the rule that where the defendant denies committing the homicide at all, he is not entitled to a self–defense instruction."); *Butler v. Commonwealth*, 516 S.W.2d 326, 328-29 (Ky. 1974). Also, Wilson stated that he met up with one of the shooters after the shooting and advised him to toss his gun. Considering the absence of evidence

4

supporting Wilson's proffered instruction, the trial court did not err in declining to instruct the jury on self-protection.

## Sentencing

Wilson alleges several sentencing errors. First, he claims that the jury was not properly instructed on the law governing the case. Next, Wilson argues that the trial court erred by failing to instruct the jury that its sentence for murder could not be altered by the trial judge. Lastly, he maintains that the sentence imposed was arbitrary and unenforceable. Wilson requests palpable error review.

### *Post-incarceration Supervision*

Pursuant to the "Truth in Sentencing" statute, the Commonwealth introduced testimony concerning sentencing ranges, parole eligibility and sentencing credits. KRS 532.055(2)(a)(4). The Commonwealth's witness did not inform the jury that KRS 532.400 imposes a one-year term of post-conviction supervision for persons convicted of a capital offense. However, KRS 532.055(2)(a) does not require that the Commonwealth do so; rather, it provides evidence that "*may* be offered by the Commonwealth . . . ." (Emphasis added). There was no error here. Also, to the extent that Wilson's argument is interpreted as a failure to *instruct* the jury on post-conviction supervision, appellate review is barred due to improper preservation. *See* RCr 9.54(2); *Martin v. Commonwealth*, 409 S.W.3d 340, 346-47 (Ky. 2013).

5

***Judicial Modification and Arbitrariness of Wilson's Sentence***

Wilson further argues that it was error not to "advise" the jury that its sentence for murder could not be altered by the judge. He specifically contends that trial judges have no statutory authority to modify sentences in non-aggravated capital cases, therefore, resulting in an arbitrary sentencing scheme. Kentucky Const. § 2; U.S. Const. Amendment XIV. These issues are also unpreserved.

Wilson fails to assert the appropriate manner in which the court should have "advised" the jury. If we interpret his argument as a failure to *instruct* the jury, our review of this issue is barred due to improper preservation. *See* RCr 9.54(2); *Martin*, 409 S.W.3d at 346-47. Interpreting Wilson's argument as an unpreserved constitutional challenge to Kentucky's statutory sentencing scheme also forecloses our review. *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008); CR 24.03.

## Conclusion

For the foregoing reasons, the judgment of the Jefferson Circuit Court is hereby affirmed.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, and Venters, JJ., sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
James David Niehaus
Office of the Louisville Metro Public Defender


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Dorislee J. Gilbert
Special Assistant Attorney General